AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

| | |
|---|---|
| Karen D. Smith | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 2:19-cv-00538-JCC |
| The Bank of New York Mellon, et al. | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To: Malcolm & Cisneros, A Law Corporation

_____
*(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:**See Exhibit A**

| Place: VIA ZOOM ( a link will be provided by counsel) | Date and Time:<br>07/12/2021 10:00 am |
|---|---|

The deposition will be recorded by this method: Zoom Video

☐ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 06/03/2021

| CLERK OF COURT | OR | |
|---|---|---|
| | | /s/ Christina L Henry, WSBA# 31273 |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Plaintiff

Plaintiff _____ , who issues or requests this subpoena, are:

Christina L Henry of Henry & DeGraaff, PS, 119 1st Ave S, Ste 500, Seattle, WA 98104, chenry@hdm-legal.com, Tel# 206-330-0595

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 2:19-cv-00538-JCC

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

The Honorable John C. Coughenour

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

9

| | |
|---|---|
| KAREN D. SMITH, | Case No.: 2:19-cv-00538-JCC |
| Plaintiffs, | **SCHEDULE A TO SUBPOENA TO TESTIFY IN A CIVIL ACTION FOR MALCOLM & CISNEROS, A LAW CORPORATION** |
| v. | |
| THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE BENEFIT OF THE CERTIFICATEHOLDERS OF THE CWABS INC., ASSET-BACKED CERTIFICATES, SERIES 2007-SD1, and NEWREZ, LLC fka NEW PENN FINANCIAL LLP, d/b/a SHELLPOINT MORTGAGE SERVICING, LLC, MTC FINANCIAL INC., d/b/a TRUSTEE CORPS, and MALCOLM & CISNEROS, A LAW CORPORATION, | |
| Defendants. | |

10

11

12

13

14

15

16

17

18

19

20

21        NOTICE IS HEREBY GIVEN that the deposition of MALCOLM & CISNEROS, A

22  LAW CORPORATION ("M&C") will be taken upon oral examination on the topics in

23  Schedule A below. The Plaintiff Karen D. Smith reserves the right to ask any background

24  information necessary to ascertain the ability of the deponent to provide the relevant testimony,

25  and to ask any follow up questions that are founded upon the information provided during the

26  deposition testimony.  M&C shall identify the person or persons who will speak on its behalf on

SCHEDULE A TO SUBPOENA TO TESTIFY IN A CIVIL
ACTION FOR MALCOLM & CISNEROS, A LAW
CORPORATION
2:19-cv-00538-JCC - 1

HENRY & DEGAAFF, PS
787 Maynard Ave S
Seattle, WA 98104
206-330-0595

each of the described topics at least seven days before the deposition(s).

The deposition of M&C's corporate representative will be taken before a Notary Public or other duly authorized person through Zoom or other electronic platform.  The deposition will be recorded by stenographic means and may also be recorded by sound-and-visual means provided by the designated company at the designated date and time:

**Seattle Deposition Reporters; https://www.seadep.com/**

**July 12, 2021, commencing at 10:00 a.m, PST.**

The deposition is subject to continuance or adjournment from time to time and place to place and is being taken on the grounds and for the reason that the deponent will give evidence material to the establishment of the facts in the case.

## **SCHEDULE A**

### *A.    INSTRUCTIONS*

This deposition is served on Malcolm & Cisneros, A Law Corporation ("M&C"). Pursuant to Rule 30(b)(6), the topics to be addressed in the deposition are set forth below and in accordance with the definitions set forth below. M&C must designate one or more officers, directors, or managing agents, or other persons who consent to testify on behalf of the corporate party named above as to each of these issues and set forth for each person designated the matters on which he/she will testify.

### *B.    DEFINITIONS*

Notwithstanding any definition below, each word, term, or phrase used in these Requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

1.    **Concerning**: The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

SCHEDULE A TO SUBPOENA TO TESTIFY IN A CIVIL              HENRY & DEGAAFF, PS
ACTION FOR MALCOLM & CISNEROS, A LAW                         787 Maynard Ave S
CORPORATION                                                                            Seattle, WA 98104
2:19-cv-00538-JCC - 2                                                                206-330-0595

2.      **Communication**: The term "communication" means the transmittal of information by any means.

3.      **Document**: The terms "document" and "documents" are defined to be synonymous in meaning and equal in scope to the usage of the term "documents" in Fed. R. Civ. P. 34(a) and include(s) the term "writing." Unless the producing party demonstrates undue burden or other grounds sufficient to meet the requirements of Fed. R. Civ. P. 26(c), electronic mail is included within the definition of the term "document." The terms "writings," "recordings," and "photographs" are defined to be synonymous in meaning and equal in scope to the usage of those terms in Fed. R. Evid. 1001. A draft or non-identical copy is a separate document within the meaning of the term "document."

4.      **Identify** (with respect to persons): When referring to a person, to "identify" means to state the person's full name, present or last known address, and, when referring to a natural person, additionally, the present or last known place of employment. If the business and home telephone numbers are known to the answering party, and if the person is not a party or present employee of a party, said telephone numbers shall be provided. Once a person has been identified in accordance with this subparagraph, only the name of the person need be listed in response to subsequent discovery requesting the identification of that person.

5.      **Identify** (with respect to documents): When referring to documents, to "identify" means to state the: (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s), and recipient(s) or, alternatively, to produce the document.

6.      **Identify** (with respect to a communication): When referring to a communication, to "identify" means to state the (i) the date of the communication; (ii) the parties to the communication; (iii) the form of communication; and (iv) the general subject matter of the communication.

7.      **Identify** (with respect to policies and procedures): When referring to policies and procedures, to "identify" means to state the (i) the dates that the policy and procedures were

SCHEDULE A TO SUBPOENA TO TESTIFY IN A CIVIL
ACTION FOR MALCOLM & CISNEROS, A LAW
CORPORATION
2:19-cv-00538-JCC - 3

HENRY & DEGAAFF, PS
787 Maynard Ave S
Seattle, WA 98104
206-330-0595

in effect or followed by "you"; (ii) the form of the policy and procedure (written or oral); (iii) the author(s) and recipients of the policy and procedure; (iv) a description of the policies and procedure and (v) the general subject matter of the policy and procedure.

8.      **Occurrence/Transaction**: The terms "occurrence" and "transaction" mean the events described in the Complaint and other pleadings, as the word "pleadings" is defined in Fed. R. Civ. P. 7(a).

9.      **Parties**: The terms "plaintiff" and "defendant" (including, without limitation, third-party plaintiff, third-party defendant, counter claimant, cross-claimant, counter-defendant, and cross-defendant), as well as a party's full or abbreviated name or a pronoun referring to a party, mean that party and, where applicable, its officers, directors, and employees. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation or to limit the Court's jurisdiction to enter any appropriate order.

10.     **Person**: The term "person" is defined as any natural person or any business, legal or governmental entity or association.

11.     When asked to "state the facts" the testimony should include (i) the identity of any **persons** with any personal knowledge of the facts stated; (ii) the identity of any **documents concerning** the facts stated; and (iii) the identity of any **communications concerning** the facts stated.

12.     "**M&C**" or "**You" or "Your"**: The terms **M&C** or pronouns of "you" or "your" refers to the entity upon whom this deposition notice has been served and all of that person's agents, representatives and attorneys.

13.     The present tense includes the past and future tenses. The singular includes the plural, and the plural includes the singular. "All" means "any and all;" "any" means "any and all." "Including" means "including but not limited to." "And" and "or" encompass both "and" and "or." Words in the masculine, feminine or neuter form shall include each of the other genders.

SCHEDULE A TO SUBPOENA TO TESTIFY IN A CIVIL
ACTION FOR MALCOLM & CISNEROS, A LAW
CORPORATION
2:19-cv-00538-JCC - 4

HENRY & DEGAAFF, PS
787 Maynard Ave S
Seattle, WA 98104
206-330-0595

14. **"Complaint"** means the initial complaint and any amended complaints filed in this action. A copy of the Amended Complaint is attached.

15. **"Answer"** means the answer and any amended answers filed by M&C. A copy is provided.

16. "**and"** as used herein includes both disjunctive or conjunctive as if it said "or" as well as "and."

17. **Any word or term not specifically defined:** If you contend that a word or phrase that is not specifically defined in these requests is vague or may have multiple meanings that prevent you from answering the request, then you should consult the Merriam Webster dictionary available online at http://www.merriam-webster.com for a definition that is incorporated into these requests by reference. If this does not resolve the issue for you, please contact us to confer on the issue before filing any objection on the basis that word or phrase in the request is vague or may have multiple meanings.

18. **"Loan"** means collectively the note and deed of trust referred to in paragraph 29 of the Plaintiff's Second Amended Complaint (Dkt No. 45).

19. **"Bankruptcy Case"** means the bankruptcy case filed by Plaintiff Karen Smith on June 5, 2008 with a discharge on September 11, 2009, in the United States Bankruptcy Court for the Western District of Washington, Case No. 08-13473-PJH.

20. **"BONY"** refers to Defendant the Bank of New York Mellon fka The Bank of New York, As Trustee For The Benefit of the Certificateholders of the CWABS Inc., Asset-Backed Certificates, Series 2007-SD1.

21. **"Shellpoint"** refers to Defendant NewRez, LLC fka New Penn Financial LLP, d/b/a Shellpoint Mortgage Servicing, LLC.

22. **"MTC"** refers to Defendant MTC Financial Inc., dba Trustee Corps.

23. **"Smith's Property"** refers to the real property located at 819 21st Ave, Seattle, WA 98122 in King County that is legally described as:

SCHEDULE A TO SUBPOENA TO TESTIFY IN A CIVIL
ACTION FOR MALCOLM & CISNEROS, A LAW
CORPORATION
2:19-cv-00538-JCC - 5

HENRY & DEGAAFF, PS
787 Maynard Ave S
Seattle, WA 98104
206-330-0595

LOTS 16 AND 17, BLOCK 2, WALLA WALLA ADDITION TO THE CITY OF SEATTLE, ACCORDING TO PLAT. RECORDED IN VOLUME *5* OF PLATS, PAGE 81, IN KING COUNTY, WASHINGTON.

24.　"**Judicial Foreclosure Action**" is the lawsuit originated in King County Superior Court, *The Bank of New York Mellon v. Karen D. Smith,* Cause No. 18-2-09839-4 SEA and filed on April 11, 2018 that was later removed to the United States District Court for the Western District of Washington and became *The Bank of New York Mellon v. Karen D. Smith*, Cause No. 2:18-cv-00764-TSZ.

25.　"**FFA Mediation**" refers to the Washington State's Foreclosure Fairness Act, RCW 61.24.165 ("FFA Mediation") for the Loan that Plaintiff Smith's attorney initiated for her with a referral on November 11, 2016 and that ended with the Mediation Report/Certification on January 10, 2018.

26.　"**2016 Notice of Trustee's Sale**" refers to the November 14, 2016 Notice of Trustee's Sale against Smith's Property with a sale date set for March 24, 2017.

27.　"**Relevant Time Period**" is from October 18. 2014 through

Unless otherwise stated, the relevant time period for these Interrogatories is from June 20, 2014 to April 10, 2019.

## C.　TOPICS OF DEPOSITIONS

28.　The facts and circumstances related to the matters in Plaintiff's Second Amended Complaint (Dkt No. 45 and attached hereto as **Exhibit 1**) and more narrowly discussed in paragraphs 12 – 80 with the attached exhibits to **Exhibit 1**. This topic is intended to be targeted at facts and circumstances within M&C's knowledge which may or may not include those factual allegations that do not appear to directly involve M&C.

29.　The matters about which the Plaintiff has requested responses and document production from M&C in Plaintiff's Interrogatories and Requests for Production served on January 8, 2020 in this litigation.

SCHEDULE A TO SUBPOENA TO TESTIFY IN A CIVIL ACTION FOR MALCOLM & CISNEROS, A LAW CORPORATION
2:19-cv-00538-JCC - 6

HENRY & DEGAAFF, PS
787 Maynard Ave S
Seattle, WA 98104
206-330-0595

30.     The facts and circumstances specifically related to the filing of Judicial Foreclosure Action, including: (a) the identity of the M&C employees, paralegals, staff, agents, vendors, or others directly involved in investigating, preparing, drafting and/or filing it; (b) the details about the actual processes, programs, procedures, safeguards and/or quality control checks followed by M&C's employees, paralegals, staff, agents, vendors, or others in preparing, drafting or filing it; (c) M&C's position and explanation as to whether or why the Judicial Foreclosure Action was or was not accurate, correct or justified; and (d) the identity of all documents, persons and other sources of information upon which any answers to questions for this topic are based.

31.     The facts and circumstances specifically related to M&C's knowledge of BONY's capacity to modify Ms. Smith's loan in FFA Mediation, including: (a) the identity of the M&C employees, paralegals, staff, agents, vendors, or others directly involved in investigating, preparing, drafting and/or filing it; (b) the details about the actual processes, programs, procedures, safeguards and/or quality control checks followed by M&C's employees, paralegals, staff, agents, vendors, or others in communicating with BONY for the FFA Mediation (c) M&C's position and explanation as to whether or why the beneficiary documents transmitted to the borrower and the mediator did not include information about beneficiary restrictions that prohibit a modification and/or efforts of the beneficiary to obtain a waiver of those restrictions; and (d) the identity of all documents, persons and other sources of information upon which any answers to questions for this topic are based..

32.     The facts and circumstances specifically related to any involvement M&C had with any correspondence, notices or other documents sent to Plaintiff Karen Smith or MTC regarding the Loan during the Relevant Time Period, (including without limitation, Notices of Default, Pre-Foreclosure Notices, Notices of Trustees' Sale, or payoff quotes) that sought Ms. Smith's immediate payment of claimed past due amounts on the Loan ("Payment Demands"), including: (a) the identity of the M&C employees, paralegals, staff, agents, vendors, or others

SCHEDULE A TO SUBPOENA TO TESTIFY IN A CIVIL
ACTION FOR MALCOLM & CISNEROS, A LAW
CORPORATION
2:19-cv-00538-JCC - 7

HENRY & DEGAAFF, PS
787 Maynard Ave S
Seattle, WA 98104
206-330-0595

directly involved in referring, investigating, preparing, drafting, making or sending each

Payment Demand; (b) the details about the actual processes, programs, procedures, safeguards

and/or quality control checks followed by M&C's employees, paralegals, staff, agents, vendors,

or others in referring, investigating, preparing, drafting, making or sending each Payment

Demand (c) M&C's position and explanation as to whether or why each Payment Demand was

or was not accurate, correct or justified, and (d) the identity of all documents, persons and other

sources of information upon which any answers in response to questions for this topic are based.

33. The facts and circumstances specifically related to the communications M&C

had with the FFA mediator and Plaintiff Smith during the FFA Mediation, including (a) written

and oral written communications and documents exchanged; (b) the mediation session on April

27, 2017; (c) the mediation session on January 19, 2018; and (d) the identity of all documents,

persons and other sources of information upon which any answers in response to questions for

this topic are based.

34. The facts and circumstances specifically related to non-privileged

communications M&C had with Defendant BONY regarding Plaintiff Smith's FFA mediation,

including (a) written and oral communications and documents; (b) the mediation session on

April 27, 2017; (c) the mediation session on January 19, 2018; and (d) the identity of all

documents, persons and other sources of information upon which any answers in response to

questions for this topic are based.

35. The number of physical offices M&C maintains and the number of states in

which it does business during the Relevant Time Period.

36. The number of attorneys, paralegals, and other staff employed by M&C in each

state and in each office during the Relevant Time Period.

37. The number of attorneys, paralegals, and other staff employed by M&C to

service clients in Washington State during the Relevant Time Period.

SCHEDULE A TO SUBPOENA TO TESTIFY IN A CIVIL
ACTION FOR MALCOLM & CISNEROS, A LAW
CORPORATION
2:19-cv-00538-JCC - 8

HENRY & DEGAAFF, PS
787 Maynard Ave S
Seattle, WA 98104
206-330-0595

1        38.    The number of judicial foreclosure cases filed in Washington state in 2016, 2017,

2 and 2018 during the Relevant Time Period

3        39.    The number of judicial foreclosure cases filed in Nevada in 2016, 2017, and

4 2018.

5        40.    The number of judicial foreclosure cases filed in California in 2016, 2017, and

6 2018.

7        41.    The number of judicial foreclosure cases filed in Arizona in 2016, 2017, and

8 2018.

9        42.    The number of proofs of claim M&C filed in bankruptcy courts in 2016, 2017

10 and 2018.

11        43.    State the facts concerning the ownership and organizational structure of M&C

12 during the Relevant Time Period.

13

14        DATED this 3rd day of June 2021.

15

16   */s/ Christina L Henry*_____
  Christina L Henry, WSBA 31273

17   HENRY & DEGRAAFF, PS
  Counsel for Plaintiffs

18   787 Maynard Ave S
  Seattle, WA 98104

19   206-330-0595 / Fax 206-400-7609
  chenry@hdm-legal.com

20

21

22

23

24

25

26

SCHEDULE A TO SUBPOENA TO TESTIFY IN A CIVIL
ACTION FOR MALCOLM & CISNEROS, A LAW
CORPORATION
2:19-cv-00538-JCC - 9

HENRY & DEGAAFF, PS
787 Maynard Ave S
Seattle, WA 98104
206-330-0595

## CERTIFICATE OF SERVICE

The undersigned certifies under the penalty of perjury according to the laws of the United States and the State of Washington that on this date I caused to be served a copy of Intent serve a subpoena with the attached subpoena with Schedule A and attached exhibits to Subpoena to Testify in a Civil Action for Malcolm & Cisneros, a Law Corporation sent via CM/ECF to the following individuals:

Pavel Ekmekchyan                        Neeru Jindal
Yu Mohandesi LLP                        Yu Mohandesi LLP
633 W 5th St, Ste 28500                 633 W 5th St, Ste 28500
Los Angeles, CA 90071                   Los Angeles, CA 90071
*pavel@yumollp.com*                     *njindal@yumollp.com*

Don Gene Grant
Washougal Town Square, Ste 245
1700 Main St
Washougal, WA 98671
*don@dongrantps.com*

Michael Steven DeLeo
Peterson Russell Kelly, PLLC
1850 Skyline Tower
10900 NE 4th St
Bellevue, WA 98004-8341
mdeleo@prklaw.com

Lori W. Hurl                            Aloysius Grant Lingg
Forsberg & Umlauf                       Forsberg & Umlauf
901 5th Ave                             901 5th Ave
Ste 1400                                Ste 1400
Seattle, WA 98164-1039                  Seattle, WA 98164-1039
lhurl@foum.law                          glingg@foum.law

Richard D. Ross
Law Office of Richard D. Ross
2737 37th Ave SW
Seattle, WA 98126
RRoss@FoUm.law

EXECUTED this 3rd day of June 2021 at Bothell, Washington.

   */s/ Christina L Henry*
   Christina L Henry, WSBA# 31273

# EXHIBIT 1

"FILED 2nd AMENDED COMPLAINT
WITH ATTACHED EXHIBITS"

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

9

| KAREN D. SMITH, | CASE NO. 2:19-cv-00538-JCC |
|---|---|

10

Plaintiff,

11

SECOND AMENDED COMPLAINT
[JURY DEMAND]

vs.

12

13  THE BANK OF NEW YORK MELLON FKA
    THE BANK OF NEW YORK, AS TRUSTEE
14  FOR THE BENEFIT OF THE
    CERTIFICATEHOLDERS OF THE CWABS
15  INC., ASSET-BACKED CERTIFICATES,
    SERIES 2007-SD1, and NEWREZ LLC FKA
16  NEW PENN FINANCIAL LLP dba
    SHELLPOINT MORTGAGE SERVICING,
17  LLC, MTC FINANCIAL INC., dba TRUSTEE
    CORPs, and MALCOLM & CISNEROS, A
18  LAW CORPORATION,

19

Defendants.

20

21          COMES NOW, KAREN D SMITH , hereinafter "Plaintiff," by and through the

22  undersigned counsel, brings this second amended complaint seeking to quiet title and for

23  damages resulting from the business practices of defendants, The Bank of New York Mellon fka

24  The Bank of New York, as Trustee for the Benefit of the Certificate holders of the CWABS Inc.,

25  Asset-Backed Certificates, Series 2007-SD1, NewRez LLC fka New Penn Financial LLP, dba

26  Shellpoint Mortgage Servicing, LLC, MTC Financial Inc., dba Trustee Corps, and Malcolm &

SECOND AMENDED COMPLAINT - 1

# __Exhibit A__

Plaintiff's Referral to Foreclosure Mediation

November 11, 2016

# REFERRAL TO FORECLOSURE MEDIATION

Check if Trustee Sale is within the next 10 days ☐

**Law Firm or Counseling Agency:**

| | |
|---|---|
| Attorney or Counselor Name: | Christina L Henry |
| Organization Name: | Henry, DeGraaff & McCormick, PS |
| Address: | 1833 N 105th St, Ste 203 | County: | King |
| City: | Seattle | Zip: | 98133 |
| State: | WA | Phone: | 206-330-0595 |
| Email: (Dept. of Commerce will send correspondence and notices to this email) | chenry@hdm-legal.com |

**Borrower(s) Contact Information:**
If more than two borrowers, use the Additional Information box.

| | |
|---|---|
| Name: | Karen D. Smith |
| Mailing Address: | 819 21st Ave |
| City, Zip: | Seattle, 98122 |
| County: | King |
| Email: | kdelores@msn.com |
| Phone: | |
| Name: | |
| Mailing Address: | |
| City, Zip: | |
| County: | |
| Email: | |
| Phone: | |

**Borrower Information:**

Is(are) the person(s) listed above the borrower(s) identified on the note/Deed of Trust?
☒ Yes  ☐ No

If No, is(are) the person(s) eligible under (see Instructions):
☐ RCW 61.24.165(5)  or  ☐ RCW 61.24.165(6)

Is(are) the borrower(s) in bankruptcy (see Instructions)?
☐ Yes  ☒ No

**Beneficiary (Holder of Note) Contact Information:**
See definitions in RCW 61.24.005.

| | |
|---|---|
| Name of Beneficiary: | The Bank of New York Mellon FKA The Bank of New York as Trustee for the Benefit of the Certificateholders of teh CWABS, Inc. Asset-Backed Certificates, Series 2007-SD1 |
| Mailing Address: | c/o Shellpoint Mortgage Svcing, PO Box 619063 |
| City: | Dallas |
| State, Zip: | TX 75261-9063 |
| Email: | |
| Phone: | 1-800-365-7107 |
| Loan No. (if known): | |

**Property Secured by Deed of Trust:**

| | |
|---|---|
| Property Address: | 819 21st Ave |
| City: | Seattle |
| County: | King |
| State, Zip: | WA, 98122 |
| Parcel No. (optional): | 9126100140 |
| Lot No. (optional): | |

Is this Deed of Trust recorded against owner-occupied residential real property? The property must have been owner-occupied as of the date of the initial contact under RCW 61.24.031 was made (RCW 61.24.165). See definitions in RCW 61.24.005.
☒ Yes  ☐ No

**Voluntary Mediation (as of 6/12/2014):**

Is this a "Voluntary Mediation Referral," meaning the borrower has failed to elect to mediate within the applicable time frame described in RCW 61.24.163(1)?
☐ Yes  ☒ No

If Yes, attach a voluntary mediation agreement signed by both parties to this referral form (see Instructions).

**Notice of Pre-Foreclosure Options Letter:**

Date:

**Notice of Default (required):**
Borrowers with NODs prior to 7/22/2011 may be referred to mediation up to one day prior to the date of the Trustee Sale. Borrowers with NODs after 7/22/2011 may be referred until 20 days after the date a Notice of Trustee Sale has been RECORDED.

| Date: | 2/18/2015 |
|---|---|

**Recording of Notice of Trustee Sale:**
| Date: | 11/17/2016 |
|---|---|

**Date of Trustee Sale:**

Form last revised 1/03/2016

| Client ID (optional): | | Date: | 3/24/2017 |
| --- | --- | --- | --- |

| Trustee Contact Information: | | Servicer Contact Information (optional): | |
|---|---|---|---|
| Organization: | MTC Financial Inc. dba Trustee Corps | Organization: | Shellpoint Mortgage Servicing |
| Contact Person: | Alan Burton | Contact Person: | |
| Mailing Address: | 500 Union Street, Ste 620 | Mailing Address: | |
| City: | Seattle | City: | |
| State, Zip: | WA, 98101 | State, Zip: | |
| Email: | | Email: | |
| Phone: | 844-367-8456 | Phone: | |
| Trustee Ref. No.: | WA08002195-14-1 | | |

**Additional information which may be helpful to the foreclosure mediation:**

The Borrower already discharged this loan in a Chapter 7 bankruptcy case

This referral is being made in my capacity as a:

☐ Housing Counselor                    ☒ Attorney

Name of HUD- or HFC-Approved Housing Agency:      WSBA #:    31273

☐ I will     ☒ I will not be representing the borrower(s) during the foreclosure mediation.

I certify that I have reviewed the individual circumstance(s) of the borrower(s) and find that foreclosure mediation is appropriate.  By signing below, I accept responsibility for the accuracy of this referral.

_Christin L Henry, WSBA #31273_

Signature of referring attorney/housing counselor

_Christin L Henry_

Print name of referring attorney/housing counselor

_11/30/2016_

Date

**Electronically Recorded**
**20161117000897**

SIMPLIFILE       NTS       76.00
Page 001 of 004
11/17/2016 02:04
King County, WA

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

Trustee Corps
500 Union Street, Suite 620
Seattle, WA 98101

| TS No WA08002195-14-1 | APN 912610-0140-09 | **1ST AM** | TO No 8488208 |
|---|---|---|---|

## NOTICE OF TRUSTEE'S SALE
## PURSUANT TO THE REVISED CODE OF WASHINGTON
## CHAPTER 61.24 ET. SEQ.

I. NOTICE IS HEREBY GIVEN that on **March 24, 2017, 10:00 AM,** at **4th Ave entrance King County Administration Building, located one block east of the Courthouse, 500 4th Ave, Seattle, WA,** MTC Financial Inc. dba Trustee Corps, the undersigned Trustee, will sell at public auction to the highest and best bidder, payable, in the form of cash, or cashier's check or certified checks from federally or State chartered banks, at the time of sale the following described real property, situated in the County of King, State of Washington, to-wit:

**LOT 16 AND 17 IN BLOCK 2 OF WALLA WALLA ADDITION TO THE CITY OF SEATTLE, AS PER PLAT RECORDED IN VOLUME 5 OF PLATS, PAGE 81, RECORDS OF KING COUNTY AUDITOR; SITUATE IN THE CITY OF SEATTLE, COUNTY OF KING, STATE OF WASHINGTON.**

APN: **912610-0140-09**

More commonly known as **819 21ST AVENUE, SEATTLE, WA 98122**

which is subject to that certain Deed of Trust dated as of February 9, 2007, executed by KAREN D. SMITH, AS HER SEPARATE ESTATE as Trustor(s), to secure obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), as designated nominee for MORTGAGE SOLUTIONS MANAGEMENT, INC., Beneficiary of the security instrument, its successors and assigns, recorded February 22, 2007 as Instrument No. 20070222000469 and the beneficial interest was assigned to **The Bank of New York Mellon FKA The Bank of New York as Trustee for the Benefit of the Certificateholders of the CWABS, Inc. Asset-Backed Certificates, Series 2007-SD1** and recorded June 21, 2010 as Instrument Number 20100621000138 of official records in the Office of the Recorder of King County, Washington.

II. No action commenced by **The Bank of New York Mellon FKA The Bank of New York as Trustee for the Benefit of the Certificateholders of the CWABS, Inc. Asset-Backed Certificates, Series 2007-SD1,** the current Beneficiary of the Deed of Trust is now pending to seek satisfaction of the obligation in any Court by reason of the Borrowers' or Grantors' default on the obligation secured by the Deed of Trust/Mortgage.

| | |
|---|---|
| Current Beneficiary: | **The Bank of New York Mellon FKA The Bank of New York as Trustee for the Benefit of the Certificateholders of the CWABS, Inc. Asset-Backed Certificates, Series 2007-SD1** |
| Contact Phone No: | **800-365-7107** |

Address:      **75 Beattie Place, Suite 300, Greenville, SC 29601**

III. The default(s) for which this foreclosure is made is/are as follows: FAILURE TO PAY WHEN DUE THE FOLLOWING AMOUNTS WHICH ARE NOW IN ARREARS:

## DELINQUENT PAYMENT INFORMATION

| From | To | Number of Payments | Monthly Payment | Total |
|------|-----|-----|-----|-----|
| July 1, 2007 | November 11, 2016 | 21 | $3,458.59 | **$500,307.45** |
| | | 62 | $3,598.65 | |
| | | 12 | $6,496.40 | |
| | | 12 | $6,874.95 | |
| | | 6 | $7,350.76 | |

## LATE CHARGE INFORMATION

| | | | |
|------|------|------|------|
| July 1, 2007 | November 11, 2016 | | **$2,111.07** |

## PROMISSORY NOTE INFORMATION

| | |
|------|------|
| Note Dated: | **February 9, 2007** |
| Note Amount: | **$356,250.00** |
| Interest Paid To: | **June 1, 2007** |
| Next Due Date: | **July 1, 2007** |

IV. The sum owing on the obligation secured by the Deed of Trust is: The principal sum of $356,250.00, together with interest as provided in the Note or other instrument secured, and such other costs and fees as are due under the Note or other instrument secured, and as are provided by statute.

V. The above described real property will be sold to satisfy the expense of sale and the obligation secured by the Deed of Trust as provided by statute. Said sale will be made without warranty, expressed or implied, regarding title, possession or encumbrances on **March 24, 2017**. The defaults referred to in Paragraph III must be cured by **March 13, 2017**. (11 days before the sale date) to cause a discontinuance of the sale. The sale will be discontinued and terminated if at any time before **March 13, 2017** (11 days before the sale) the default as set forth in Paragraph III is cured and the Trustees' fees and costs are paid. Payment must be in cash or with cashiers' or certified checks from a State or federally chartered bank. The sale may be terminated any time after the **March 13, 2017** (11 days before the sale date) and before the sale, by the Borrower or Grantor or the holder of any recorded junior lien or encumbrance by paying the principal and interest, plus costs, fees and advances, if any, made pursuant to the terms of the obligation and/or Deed of Trust.

VI. A written Notice of Default was transmitted by the current Beneficiary, The Bank of New York Mellon FKA The Bank of New York as Trustee for the Benefit of the Certificateholders of the CWABS, Inc. Asset-Backed Certificates, Series 2007-SD1 or Trustee to the Borrower and Grantor at the following address(es):

ADDRESS
KAREN D SMITH
819 21ST AVENUE, SEATTLE, WA 98122

KAREN D SMITH
7617 N. E. 167TH, BOTHELL, WA 98011

KAREN D SMITH
PO BOX 22417, SEATTLE, WA 98122

UNKNOWN SPOUSE OF KAREN D SMITH
819 21ST AVENUE, SEATTLE, WA 98122

UNKNOWN SPOUSE OF KAREN D SMITH
7617 N. E. 167TH, BOTHELL, WA 98011

UNKNOWN SPOUSE OF KAREN D SMITH
PO BOX 22417, SEATTLE, WA 98122

by both first class and certified mail on **February 18, 2015**, proof of which is in the possession of the Trustee; and the Borrower and Grantor were personally served with said written Notice of Default or the written Notice of Default was posted in a conspicuous place **February 17, 2015** on the real property described in Paragraph I above, and the Trustee has possession of proof of such service or posting.

**VII.** The Trustee whose name and address are set forth below will provide in writing to anyone requesting it, a statement of all costs and fees due at any time prior to the sale.

**VIII.** The effect of the sale will be to deprive the Grantor and all those who hold by, through or under the Grantor of all their interest in the above described property.

**IX.** Anyone having any objections to this sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustees' Sale.

**X.** If the Borrower received a letter under RCW 61.24.031:

**THIS NOTICE IS THE FINAL STEP BEFORE THE FORECLOSURE SALE OF YOUR HOME.**

You have only 20 DAYS from the recording date on this notice to pursue mediation.

**DO NOT DELAY. CONTACT A HOUSING COUNSELOR OR AN ATTORNEY LICENSED IN WASHINGTON NOW** to assess your situation and refer you to mediation if you might eligible and it may help you save your home. See below for safe sources of help.

<u>**SEEKING ASSISTANCE**</u>

Housing counselors and legal assistance may be available at little or no cost to you. If you would like assistance in determining your rights and opportunities to keep your house, you may contact the following:

The statewide foreclosure hotline for assistance and referral to housing counselors recommended by the Housing Finance Commission: Telephone: (877) 894-4663 or (800) 606-4819 Website: www.wshfc.org

The United States Department of Housing and Urban Development: Telephone: (800) 569-4287 Website: www.hud.gov

The statewide civil legal aid hotline for assistance and referrals to other housing counselors and attorneys: Telephone: (800) 606-4819 Website: www.homeownership.wa.gov

**NOTICE TO OCCUPANTS OR TENANTS** – The purchaser at the Trustee's Sale is entitled to possession of the property on the 20th day following the sale, as against the Grantor under the Deed of Trust (the owner) and anyone having an interest junior to the Deed of Trust, including occupants who are not tenants. After the 20th day following the sale the purchaser has the right to evict occupants who are not tenants by summary proceedings under the Unlawful Detainer Act, Chapter 59.12 RCW. For tenant-occupied property, the purchaser shall provide a tenant with written notice in accordance with RCW 61.24.060;

Dated: ___11/14/16___

MTC Financial Inc. dba Trustee Corps, as Duly Appointed Successor Trustee

By: Alan Burton, Vice President

MTC Financial Inc. dba Trustee Corps
500 Union Street, Suite 620
Seattle, WA 98101
Toll Free Number: (844) 367-8456
TDD: (800) 833-6388

**For Reinstatement/Pay Off Quotes, contact MTC Financial Inc. DBA Trustee Corps**

**SALE INFORMATION CAN BE OBTAINED ON LINE AT** www.insourcelogic.com
**FOR AUTOMATED SALES INFORMATION PLEASE CALL:**
**In Source Logic AT 702-659-7766**

STATE OF WASHINGTON
COUNTY OF KING

I certify that I know or have satisfactory evidence that <u>ALAN BURTON</u> is the person who appeared before me, and said person acknowledged that he/she signed this instrument, on oath stated that he/she was authorized to execute the instrument and acknowledged it as the **Vice President for MTC Financial Inc. DBA Trustee Corps** to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: __11-14-16__

Notary Public in and for the State of Washington

Residing at <u>King County</u>

My Commission expires __Feb 9, 2018__

Notary Public
State of Washington
CYNTHIA FEENEY
My Appointment Expires Feb 9, 2018

Trustee Corps may be acting as a debt collector attempting to collect a debt.
Any information obtained may be used for that purpose.

To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. However, a secured party retains rights under its security instrument, including the right to foreclose its lien.

# Shellpoint
## Mortgage Servicing

**MORTGAGE STATEMENT**

Statement Date: 10/17/2016

**DO NOT SEND MAIL OR PAYMENTS TO THIS ADDRESS**
P.O. Box 619063 • Dallas, TX 75261-9063

| | |
|---|---|
| Account Number | |
| Next Due Date | 11/01/20 |
| Amount Due | $513,363.2 |

*If payment is received after 11/16/2016, $0.00 late fee may be assessed.*

8-811-01143-0001029-001-1-001-010-000-000

KAREN D SMITH
PO BOX 22417
SEATTLE WA 98122-0417

| | |
|---|---|
| Phone: | 866-316-4706 |
| Website: | www.shellpointmtg.com |

## Explanation of Amount Due

| | |
|---|---|
| Principal | $337. |
| Interest | $3,261. |
| Escrow (Taxes and Insurance) | $3,752. |
| **Regular Monthly Payment** | **$7,350.** |
| Total Fees and Charges | $0.0 |
| Overdue Payment | $506,012. |
| **Total Amount Due** | **$513,363.** |

## Account Information

| | |
|---|---|
| Outstanding Principal | $356,250.00 |
| Interest Rate (until 03/01/2017) | 11.6500% |
| Prepayment Penalty | None |
| Property Address: | 819 21ST AVENUE |
| | SEATTLE WA 98122 |
| Contractual Due Date: | July 1, 2007 |
| Current Escrow Balance: | -$40,697.57 |

## Past Payments Breakdown

| | Paid Last Month | Paid Year t Date |
|---|---|---|
| Principal | $0.00 | $0. |
| Interest | $0.00 | $0. |
| Escrow | $0.00 | $0. |
| Fees/Late Charges | $0.00 | $0. |
| Total | $0.00 | $0. |

## Transaction Activity (09/16/2016 - 10/16/2016)

| Date | Description | Charges | Paymen |
|---|---|---|---|
| 09/29/2016 | Occ Prop Insp Disbursement | $13.00 | $0. |
| 09/30/2016 | County Tax Bill 2 | $2,253.49 | $0. |

## Important Messages

*Partial Payments: Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account according to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage.

## Additional Messages

Please visit our website at www.shellpointmtg.com to view our Privacy Notice.

Repayment options may be available to you. **Call 866-316-4706** to discuss payment arrangements. Failure to act on this matter may result in us exercising our legal rights as permitted by the contract and applicable state laws.

**For information about your payments, total amount due, and any additional payment history, see reverse side.**

## **Delinquency Notice**

You are late on your mortgage payments. Failure to bring your loan current may result in fees and foreclosure – the loss of your home. As of 10/17/2016, you are 3,396 days delinquent on your mortgage loan.
**Recent Account History**
o Payment due 05/01/16: unpaid balance of $489,258.64
o Payment due 06/01/16: unpaid balance of $7,350.76
o Payment due 07/01/16: unpaid balance of $7,350.76
o Payment due 08/01/16: unpaid balance of $7,350.76
o Payment due 09/01/16: unpaid balance of $7,350.76
o Payment due 10/01/16: unpaid balance of $7,350.76
o Payment due 11/01/16: current payment due

o **Total: $513,363.20 due. You must pay this amount to bring your loan current.**

If You Are Experiencing Difficulty: Please refer to the back of this statement for additional messages about mortgage counseling and assistance.

Cisneros, a Law Corporation, which are unfair and deceptive and in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*("FDCPA"), and the Washington Consumer Protection Act, RCW 19.86, *et seq.* ("WCPA"). The Plaintiff also seeks to quiet title pursuant to RCW 7.28.300.

## I.     PARTIES, JURISDICTION AND VENUE

1.       Karen D. Smith is a resident of King County, Washington and the record owner of the real property located at 819 21st Ave, Seattle, WA 98122 ("the Property") in King County that is legally described as:

> LOTS 16 AND 17, BLOCK 2, WALLA WALLA ADDITION TO THE CITY OF SEATTLE, ACCORDING TO PLAT. RECORDED IN VOLUME 5 OF PLATS, PAGE 81, IN KING COUNTY, WASHINGTON.

2.       Plaintiff Karen Smith is a "consumer" as defined by 15 U.S.C. § 1692a(3).

3.       Plaintiff Karen Smith is a "debtor" as defined by RCW § 19.16.100(11).

4.       Defendant, Bank of New York Mellon fka The Bank of New York, as Trustee for the Benefit of the Certificate holders of the CWABS Inc., Asset-Backed Certificates, Series 2007-Sd1 ("BONY"), is a national banking association with its main office located in Pittsburgh, Pennsylvania. *See Rouse v. Wachovia Mortgage, FSB*, 747 F.3d 707, 715 (9th Cir. 2014)(a national banking association is a citizen only of the state in which its main office is located).

5.       Defendant, New Rez LLC fka New Penn Financial LLP, doing business as, Shellpoint Mortgage Servicing, LLC ("Shellpoint") is a foreign limited liability company, with its principal place of business in Plymouth Meeting, Pennsylvania. NewRez LLC, as Shellpoint, conducts business in Washington and is the present servicer of the subject mortgage loan.

6.       Defendant Shellpoint acts as a debt collector as defined by 15 U.S.C. § 1692a(6) of the FDCPA, because they regularly use the mails and/or the telephone in their business, the principal purpose of which is to collect, or attempt to collect, directly or indirectly, delinquent consumer debts.

SECOND AMENDED COMPLAINT - 2

HENRY & DeGRAAFF, P.S.
787 MAYNARD AVE S
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

7. Defendant Shellpoint operates a nationwide debt collection business and attempts to collect debts from consumers in virtually every state, including consumers in the state of Washington via collection letters, phone calls, credit reports and lawsuits.

8. Defendant Shellpoint obtained the servicing rights to this debt after it was already in default and at that time started soliciting payment from the Plaintiff and collecting on the debt. Thus, Defendant Shellpoint was acting as a debt collector, as that term is defined in the FDCPA in their attempts to collect a debt from Plaintiff.

9. Defendant Shellpoint attempted to collect a "debt" from the Plaintiff, as that term is defined by the FDCPA, 15 U.S.C. § 1692(a)(5).

10. Defendant Shellpoint is a "collection agency" that regularly engages in soliciting claims for collection or collecting or attempting to collect claims owed or due or asserted to be owed or due another person as defined by RCW 19.16.100.

11. MTC Financial, Inc., is doing business in Washington as, Trustee Corps. ("MTC"), and is incorporated under the laws of California, and has its principal place of business in Irvine, California.

12. Defendant Malcolm & Cisneros, a Law Corporation ("Malcolm & Cisneros"), is a law firm doing business in Washington with its principal place of business located in Irvine, California.

13. Defendant Malcolm & Cisneros is a California state law firm engaged in the business of collecting debts that are originally owed or due, or asserted to be owed or due, to another.

14. Defendant Malcolm & Cisneros started collecting on this debt after it was already in default and at that time started soliciting payment from the Plaintiff and collecting on the debt. They are a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6), because they regularly use the mails and/or the telephone in their business, the principal purpose of which is to collect, or attempt to collect, directly or indirectly, delinquent consumer debts.

SECOND AMENDED COMPLAINT - 3

15.     Thus, Defendant Malcolm & Cisneros was acting as a debt collector, as that term is defined in the FDCPA in their attempts to collect a debt from Ms. Smith.

16.     Defendant Malcolm & Cisneros attempted to collect a "debt" from Ms. Smith, as that term is defined by the FDCPA, 15 U.S.C. § 1692(a)(5).

17.     Defendant Malcolm & Cisneros is an entity who regularly engages in soliciting claims for collection or collecting or attempting to collect claims owed or due or asserted to be owed or due another person as defined by RCW 19.16.100(4).

18.     Malcolm & Cisneros have used the mail, the telephone and the internet to reach across state lines into Washington to conduct their business.

19.     Shellpoint and Malcolm & Cisneros have provided services and receive compensation for performance of these services but none of them have a direct stake in the ownership or a security interest in the collateral used to secure the mortgage loans they collect. By having no skin in the game whatsoever, Shellpoint and Malcolm & Cisneros have not been willing to take the time to investigate or to otherwise address any concern that borrowers Ms. Smith have about the mortgage loan or the foreclosure of her property.

20.     Malcolm & Cisneros' activities within Washington are limited to collecting debts from debtors located in this state by means of interstate communications, including telephone, mail, or facsimile transmission, from Malcolm & Cisneros' location in Irvine, California.

21.     Malcolm & Cisneros headquarters is located in Irvine, California.

22.     The Creditor on whose behalf Malcolm & Cisneros sought to collect a debt from Ms. Smith are located outside of Washington state.

23.     Malcolm & Cisneros' attempts to collect a debt from Ms. Smith were not confined to the operation of a business other than that of a collection agency.

24.     Malcolm & Cisneros' attempts to collect a debt from Plaintiff were not directly related to the operation of a business other than that of a collection agency.

25.     Malcolm & Cisneros is an "out-of-state collection agency" as defined by RCW § 19.16.100(10).

SECOND AMENDED COMPLAINT - 4

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

26.     Alternatively, Malcolm & Cisneros is a "collection agency" as defined by RCW § 19.16.100(4).

27.     This Court has original jurisdiction over the subject matter of this action pursuant to both 28 U.S.C. § 1331 which grants jurisdiction over actions presenting a federal question[1] and 28 U.S.C. §1332 because the Plaintiff and Defendants are citizens of different states[2] and the total amount in controversy exceeds $75,000.00, exclusive of interest and costs.

28.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because the events or omissions giving rise to the claims described herein occurred in the State of Washington and plaintiff Smith resides in the subject property which is located in Seattle, King County, Washington. This Court has supplemental jurisdiction over plaintiff's claims arising under the laws of Washington pursuant to 28 U.S.C. §1367(a), because those claims are so related to Plaintiffs' claims under Federal law that they form part of the same case or controversy.

## II.     FACTUAL ALLEGATIONS

29.     On February 9, 2007, the Plaintiff borrowed money from Mortgage Solutions Management, Inc., a California corporation engaged in residential lending in Washington, and secured the loan with a Deed of Trust on her residence at 819 21st Avenue, Seattle, WA 98122, and legally described as:

> LOT 16 AND 17 IN BLOCK 2 OF WALLA WALLA ADDITION TO THE CITY OF SEATTLE, AS PER PLAT RECORDED IN VOLUME 5 OF PLATS, PAGE 81, RECORDS OF KING COUNTY AUDITOR; SITUATE IN THE CITY SATE COUNTY OF KING, STATE OF WASHINGTON.

30.     On July 1, 2007, Ms. Smith ceased making payment on the loan.

31.     On June 5, 2008 Ms. Smith filed for bankruptcy.

---

[1] *Williams v. PRK Funding Services, Inc.*, 2:18-cv-0048RSM, Dkt. No. 107, pgs. 5-6. (U.S. Dist. Ct., W.D. Wash., July 7, 2018)(the court held claims implicating substantial federal questions are sufficient to invoke federal jurisdiction).
[2] *See Rouse v. Wachovia Mortgage, FSB*, 747 F.3d 707, 715 (9th Cir. 2014).

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

32.     After Ms. Smith defaulted in July 2007, her loan and deed of trust was purchased and transferred to BONY.

33.     On March 30, 2009, BONY participated in Ms. Smith's bankruptcy case through the filing of a motion for relief from stay under 11 U.S.C. § 362 allowing BONY to proceed with and complete any and all contractual and statutory remedies incident to its security interests held in the Property.

34.     At the time of the relief from stay motion, Countrywide Home Loans Servicing, LP was the servicer for BONY on Ms. Smith's loan.

35.     Ms. Smith's bankruptcy judge granted the relief from stay motion on April 29, 20009.

36.     On September 11, 2009, Ms. Smith received a bankruptcy discharge pursuant to 11 U.S.C. § 727.

37.     Ms. Smith's bankruptcy case closed on September 18, 2009.

38.     As a result of the bankruptcy, the Plaintiff's personal obligation on the mortgage was discharged, but BONY retained an *in rem* interest in the Property even after discharge. *Johnson v. Home State Bank*, 501 U.S. 78, ,82-84 (1991).

39.     Between July 1, 2007 and the present date, the Plaintiff has made no payments on the loan.

40.     While Ms. Smith was in default on the loan, Shellpoint took over servicing on her loan.

41.     Without tolling, the six-year statute of limitations to enforce Ms. Smith's deed of trust would have expired on September 11, 2015.

42.     With tolling, Plaintiff asserts that the statute of limitations expired on July 15, 2016 and any actions to collect the debt or to foreclose non-judicially or judicially after that date were time-barred.

HENRY & DeGRAAFF, P.S.
787 MAYNARD AVE S
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

43.     Nonetheless, on November 14, 2016, Defendant MTC, at the direction of BONY through its loan servicer Shellpoint, issued a Notice of Trustee's Sale ("NTS") against the Plaintiff's Property with a sale date set for March 24, 2017.

44.     At all times relevant here, BONY through its loan servicer Shellpoint, retained the right to control the issuance of the NTS even if Defendant MTC had the authority to control the foreclosure process. *Wilcox v. Basehore*, 187 Wn.2d 772, 789 (2017.

45.     In any event, MTC as the trustee of a deed of trust under RCW 61.24 *et seq,* had a duty of good faith to the borrower, beneficiary and the grantor under state law. RCW 61.24.010(5).

46.     Despite the expiration of the statute of limitations on July 15, 2016, the NTS was recorded in the King County recorder's office on November 17, 2016, under recording number 20161117000897.

47.     Tolling events were due to five non-judicial foreclosure actions initiated over the ensuing years, tolling the statute of limitations for 438 days:

48.     Foreclosure 1: A recorded notice of trustee sale on May 27, 2009 setting an August 28, 2009 sale date. The sale did not occur and was not continued and since it occurred prior to the bankruptcy discharge on September 11, 2009 it did not toll the statute.

49.     Foreclosure 2: A recorded notice of trustee sale issued on July 19, 2010 with a sale date of October 15 = 88 days; statute of limitations delayed to December 8, 2015.

50.     Foreclosure 3: A recorded notice of trustee sale issued April 19, 2011 with a sale date of July 22 = 94 days; statute of limitations delayed to March 11, 2016.

51.     Foreclosure Notice 4: A recorded notice of trustee sale issued March 27, 2015 with a sale date of July 31, 2015 = 126 days; statute of limitations delayed to July 15, 2016.

52.     Foreclosure Notice 5: A recorded notice of trustee sale issued November 14, 2016 with a sale date of March 24, 2017.

53.     By the Plaintiff's calculations, Foreclosure 5 was issued after the expiration of the statute of limitations on July 15, 2016 and was therefore time barred.

SECOND AMENDED COMPLAINT - 7

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

54.     In total, then, the statute of limitations was tolled for a total of 308 days between July 19, 2010 and July 31, 2015, and – had it not expired in July 2016 – would have been tolled for an additional 130 days between November 2016 and March 2017 for a total of 438 days.

55.     More than 9 years had passed between the last payment made and the commencement of the non-judicial foreclosure initiated by MTC.

56.     The debt asserted by MTC is a time barred debt pursuant to RCW 4.16.040.

57.     Since MTC's filing of the NTS was done at the direction of BONY through its loan servicer Shellpoint, Judge Zilly's ruling in *The Bank of New York Mellon v. Karen D. Smith*, Case No. C18-0764-TSZ, Dkt. No. 16 regarding the tolling events in regards to this loan collaterally estops MTC from relitigating the statute of limitations issue in this case.

58.     On November 30, 2016, Ms. Smith, through counsel, requested a referral to foreclosure mediation under Washington State's Foreclosure Fairness Act, RCW 61.24.165 ("FFA Mediation"). The referral included a notation that the borrower had already discharged this loan in a Chapter 7 bankruptcy case. *See* **Ex. A,** Referral to Foreclosure Mediation dated November 30, 2016.

59.     Thereafter, representing herself, Ms. Smith participated in two FFA mediation sessions on April 27, 2017 and January 9, 2018 with her mortgage servicer, Shellpoint who was represented by Malcolm & Cisneros.

60.     During the FFA Mediation, Ms. Smith asserted that the BONY mortgage on her property was time barred but nonetheless engaged in good faith in the mediation process.

61.     Unfortunately, after several months in the FFA mediation, Shellpoint through their attorneys Malcolm & Cisneros, informed the Plaintiff that the investors who owned the promissory note for her mortgage loan had not given contractual authority to modify the loan.

62.     Thereafter, despite assurances that the investors would review a renewed application after prompting from the FFA mediator, BONY, through their loan servicer Shellpoint and their attorneys Malcolm & Cisneros became non-responsive, made late payment of the mediation fees, filed to include a modification Net Present Value ("NPV") analysis as

**HENRY & DEGRAAFF, P.S.**
787 MAYNARD AVE S
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

required, and failed to appear at the final mediation. As a result, the FFA mediator issued a not in good faith certification under RCW 61.24.163. ***See* Ex. B**, Foreclosure Mediation Certification.

63.     On April 11, 2018, BONY, through its loan servicer Shellpoint and attorneys Malcolm & Cisneros, filed a judicial foreclosure on the Plaintiff's Property in Washington State in King County Superior Court, *The Bank of New York Mellon v. Karen D. Smith,* Cause No. 18-2-09839-4 SEA ("Judicial Foreclosure Complaint"), that was time barred under RCW 4.16.040. *See Edmundson v. Bank of Am.*, 194 Wn. App. 920, 927, 378 P.3d 272 (2016).

64.     The Judicial Foreclosure Complaint was served on Ms. Smith on April 29, 2018.

65.     Thereafter, on May 28, 2018, BONY, through its loan servicer Shellpoint and attorneys Malcolm & Cisneros removed the Judicial Foreclosure Complaint to federal court in the United States District Court for the Western District of Washington, *The Bank of New York Mellon v. Karen D. Smith*, Cause No. 2:18-cv-00764-TSZ.

66.     On October 17, 2018, the Honorable Judge Zilly granted a dismissal of the Judicial Foreclosure Complaint on October 17, 2018, finding that the action was time barred under RCW 4.16.040. *See The Bank of New York Mellon v. Karen D. Smith*, Case No. C18-0764-TSZ, Dkt. No. 16.

67.     The dismissal order is currently on appeal in the Ninth Circuit under cause no. 18-35950.

68.     Malcolm & Cisneros do not have a collection agency license under Chapter 19.16 RCW.

69.     Since July 15, 2016, BONY, though their agent Shellpoint, has continued to send monthly statements to Karen Smith directly or through her attorney, claiming that Ms. Smith owed periodic monthly installments on the Property even though the debt was time barred and discharged in bankruptcy.

70.     On or about August 16, 2018, Shellpoint sent Ms. Smith a mortgage statement, stating she owed an accelerated amount of $744,622.39 that was "now due and payable in full" with a reinstatement amount of $645,227.76 to reinstate her mortgage loan.

SECOND AMENDED COMPLAINT - 9

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

71.     On or about November 17, 2018, Shellpoint sent Ms. Smith's mortgage statement, stating that she owed an accelerated amount of $755,127.88 that was "now due and payable in full" with a reinstatement amount of $544,071.85 to reinstate her mortgage loan.

72.     On or about December 18, 2018, Shellpoint sent Ms. Smith's mortgage statement, stating that she owed an accelerated amount of $759,107.78 that was "now due and payable in full" with a reinstatement amount of $445,473.49 to reinstate her mortgage loan.

73.     On or about January 18, 2018, Shellpoint sent Ms. Smith's mortgage statement, stating that she owed an accelerated amount of $762,149.22 that was "now due and payable in full" with a reinstatement amount of $449,374.23 to reinstate her mortgage loan.

74.     On or about February 16, 2019, Shellpoint sent Ms. Smith's mortgage statement, stating that she owed an accelerated amount of $765,967.42 that was "now due and payable in full" with a reinstatement amount of $453,224.97 to reinstate her mortgage loan.

75.     On or about March 18, 2019, Shellpoint sent Ms. Smith's mortgage statement, stating that she owed an accelerated amount of $770,741.27 that was "now due and payable in full" with a reinstatement amount of $458,696.81 to reinstate her mortgage loan.

76.     Additionally, even though BONY's Judicial Foreclosure Complaint was dismissed on October 17, 2018, BONY, though their agent Shellpoint, has continued to assess fees associated with that lawsuit, including $1,347.50 for attorney cost disbursement on her December 16, 2018 statement; a $505.00 filing cost disbursement on the January 18, 2019 statement; $455.00 for attorney cost disbursement on her February 16, 2019 statement; and $2,030.00 for attorney cost disbursement on her March 13, 2019 statement.

77.     Additionally, despite requests in writing, Shellpoint has refused to send the monthly periodic statement directly to Plaintiff Smith despite her request, instead directing them on a monthly basis to her counsel.

78.     In January 2019, Plaintiff Smith sent Shellpoint a Request for Information Pursuant to Section 1024.36 of Regulation X to request that monthly statements be sent directly

SECOND AMENDED COMPLAINT - 10

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

to her, to dispute any debt that was alleged to be owed and to request more information about the confusing and misleading amounts on her monthly mortgage statements.

79.     In response, BONY, though their agent Shellpoint, responded with correspondence dated March 20, 2019 stating that Shellpoint could continue to service the loan and charge interest, payments, credits, fees, and/or other permissible charges which would cause the loan balance to vary from day to day.

80.     The March 20, 2019 correspondence also reiterated that the Plaintiff was due for the July 1, 2007 payment and that Shellpoint on behalf of BONY could continue to demand payment pending an appeal of the dismissed judicial foreclosure.

### III.     CAUSES OF ACTION

#### A.     COUNT ONE: WASHINGTON CONSUMER PROTECTION ACT UNDER RCW 19.86 (CPA) – AS TO MALCOLM & CISNEROS' UNLICENSED DEBT COLLECTION UNDER RCW 19.16 *et seq.*(WCAA)

81.     Plaintiff incorporate herein by reference as though fully set forth at length each preceding allegation and statement contained herein, inclusive, of the Factual Allegations.

82.     Because RCW Chapter 19.16 is enforced through RCW 19.86 *et seq.*, allegations of violations in RCW Chapter 19.16 are therefore CPA violations.

83.     Malcolm & Cisneros is a law firm engaged in the business of collecting debts on behalf of others.

84.     Malcolm & Cisneros started soliciting payment from Ms. Smith and collecting on her mortgage loan on behalf of a third party after her loan was in default.

85.     Malcolm & Cisneros provides services and receives compensation for performance of these debt collection services.

86.     Malcolm & Cisneros filed a judicial foreclosure lawsuit on April 11, 2018 claiming that Ms. Smith's loan debt was still legally owed after it had been discharged and time-barred.

87.     Malcolm & Cisneros' lawsuit of April 11, 2018 omitted the material fact of the September 11, 2009 bankruptcy discharge. Malcolm & Cisneros was informed of the discharge and knew, or should have known, that the discharge started the statute of limitations to run and

SECOND AMENDED COMPLAINT - 11

**HENRY & DEGRAAFF, P.S.**
787 MAYNARD AVE S
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

that it also prevented the plaintiff from incurring personal liability on the debt. The factual omission of the debt's discharge in the lawsuit was misleading and the equivalent of an affirmative false statement.

88.     Malcolm & Cisneros filed a lawsuit demanding an award of all expenses and costs of collection even though plaintiff's personal liability on the debt was previously discharged in bankruptcy. *Id.* at Dkt. No. 1-2, pgs. 7-8.

89.     By not having applied for and obtaining a license, Malcolm & Cisneros violated RCW § 19.16.110.

90.     Malcolm & Cisneros also violated § 19.16.250(23) by bringing a judicial foreclosure complaint that that it knew or reasonably should have known was barred by the statute of limitations before they filed it.

91.     Malcolm & Cisneros' violations of the licensing provisions of the WCAA, including RCW § 19.16.110 and § 19.16.250(23) constitute *per se* unfair acts or practices or unfair methods of competition in the conduct of trade or commerce for the purpose of the application of the CPA. RCW § 19.16.440.

92.     Here, Malcolm & Cisneros denied Ms. Smith the information set forth in RCW § 19.16.250(8)(c) by failing to provide all the information required in RCW § 19.16.250(8)(c) in its judicial foreclosure complaint as required by RCW § 19.16.250(9). *See Handlin v. On-Site Manager, Inc.*, 187 Wash.App. 841, 850-51, 351 P.3d 226 (2015).

93.     Ms. Smith had a right to use and possess this information about her mortgage loan because this information affected what she may have or may not have owed on her property.

94.     But for Malcolm & Cisneros not providing this information to Mr. Smith, she would not have been deprived of information that she was entitled to receive so that she could understand whether she had any way to save her house from foreclosure.

95.     Ms. Smith was injured in the form of a negatively impacted credit profile for over ten years.  Defendants' failure to mitigate left plaintiff with a credit profile in flux and eliminated hope of moving forward pending resolution.

HENRY & DeGRAAFF, P.S.
787 MAYNARD AVE S
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

96.     Malcolm & Cisneros' actions humiliated and professionally damaged plaintiff because it harmed her reputation as a certified residential real estate appraiser. Plaintiff's prolonged status in foreclosure disqualified her from eligibility to receive appraisal assignments as an appraiser on the FHA Appraisal Roster. 24 C.F.R. §200.202(b)(2) *and See Taggart v. GMAC Mortgage, LLC, et al*, 12-cv-0415, Dkt. No. 54, (U.S. Dist. Ct., E.D. Penn., Aug. 12, 2013)(Appraiser was removed from the FHA Roster for being listed on HUD's Credit Alert Verification Reporting System ("CAVRS") for defaulting on his own mortgage loan.).

97.     Indeed, months after defaulting on her loan, plaintiff learned her license was terminated on FHA's appraiser roster. ***See* Ex. C,** e-mail of May 13, 2008 from HUD stating, "License terminated on appraiser roster."

98.     Ms. Smith would not have been injured in her business and property but for defendants' dilatory and manipulative conduct.

99.     Ms. Smith refrained from re-applying for a position on the FHA Roster as well as the VA Roster because the prolonged foreclosure disqualifies her from those rosters.

100.     Ms. Smith has been a certified residential real estate appraiser for twenty-seven, (27) years, but was unable to accept FHA or VA appraisal assignments for twelve (12) of those years because of the continuous and unending foreclosure status imposed by defendants.

101.     The career restrictions and resulting income reduction caused by defendants' default mitigation evasion, caused plaintiff to seek lesser paying data-entry work unrelated to her training, knowledge, and experience.

102.     But for Malcolm & Cisneros' conduct plaintiff would not be incurring the arrears, additional costs and expenses described above.

**B.     COUNT TWO: WASHINGTON CONSUMER PROTECTION ACT UNDER RCW 19.86 (CPA) – ALL DEFENDANTS**

103.     Plaintiff incorporate herein by reference as though fully set forth at length each preceding allegation and statement contained herein, inclusive, of the Factual Allegations.

104.     Acting as alleged herein, Defendants BONY Shellpoint, MTC and Malcolm & Cisneros violated Washington's Consumer Protection Act codified in RCW 19.86.

SECOND AMENDED COMPLAINT - 13

**HENRY & DeGRAAFF, P.S.**
787 MAYNARD AVE S
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

105.     Because RCW 61.24 *et seq*. is enforced through RCW 19.86, allegation of violations of the duty of good faith under RCW 61.24 *et seq*. are therefore CPA violations. RCW 61.24.135(2).

106.     Ms. Smith has a private right of action under RCW 19.86.090, and files this claim within the four-year statute of limitation under RCW 19.86.120.

107.     Ms. Smith alleges the following conduct regarding events that start with the filing of a November 2016 NTS;

    a.     Defendant BONY, Shellpoint, MTC and Malcolm & Cisneros knew that Ms. Smith's mortgage was part of a sale and that it was secured by her residential property thus affecting her directly.

    b.     Defendant BONY, Shellpoint, and Malcolm & Cisneros knew that Ms. Smith defaulted on her mortgage on July 1, 2007, filed for bankruptcy on June 5, 2008, and obtained a bankruptcy discharged of her debts under 11 U.S.C. §727 on September 11, 2009.

    c.     Defendant BONY through their agents Shellpoint and MTC, subsequently initiated a non-judicial foreclosure sale of plaintiff's home in November 2016.

    d.     Defendant BONY through their agent Shellpoint and MTC and their attorneys Malcolm & Cisneros knew that Ms. Smith was referred to Washington's foreclosure mediation program on November 30, 2016. ***See* Ex. A,** Referral to Foreclosure Mediation dated November 30, 2016.

    e.     Defendant BONY through their agent Shellpoint and their attorneys Malcolm & Cisneros, actively participated in Ms. Smith's FFA mediation.

    f.     At the conclusion of the parties' participation in Washington's foreclosure mediation program, a foreclosure mediator certified Defendants' breach of their duty to mediate in good faith under RCW 61.24.163. ***See* Ex. B**, Foreclosure Mediation Certification.

    g.     The foreclosure mediator's certification cites Defendants' non-responsiveness,

**HENRY & DEGRAAFF, P.S.**
787 MAYNARD AVE S
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

lack of contractual authority to modify the loan[3], late mediation fee payment[4], failure to appear[5], as basis for her determination. *See* **Ex. B**.

108.    Defendant BONY, through its loan servicer Shellpoint, used false, deceptive, or misleading representations, or means, in connection with the collection of an alleged debt as assessed by the least sophisticated consumer standard in the following ways:

    a.    BONY, through its loan servicer Shellpoint, sent mortgage statements after July 15, 2016 claiming that Ms. Smith owed periodic monthly installments for her mortgage after the mortgage debt was time-barred and no longer collectible.

    b.    BONY through its loan servicer Shellpoint sent conflicting and misleading mortgage statements about the amount it alleged was owed to reinstate the borrower in the mortgage loan, as exemplified by the November 17, 2018 mortgage statement which stated that $544,071.85 was required to reinstate the loan and then one month later, the December 18, 2018 mortgage statement stated that the reinstatement amount was $445,473.49; a difference of $98,598.36, with no explanation.

109.    Defendant BONY through its loan servicer Shellpoint made numerous prohibited attempts to collect on a time-barred claim. Shellpoint sent misleading mortgage statements claiming that prior delinquencies were owed, that were no longer owed by virtue of the statute of limitations. Defendants BONY through its loan servicer Shellpoint also attempted to collect attorney's fees and costs associated with a Judicial Foreclosure Complaint that was dismissed.

110.    As a non-judicial foreclosure trustee, Defendant MTC, acting at the direction of BONY, through its loan servicer Shellpoint, also recorded a time-barred NTS setting a non-judicial foreclosure for March 24, 2017 to recover secured debt that was discharged on September 11, 2009.

---

[3] RCW 61.24.163 (10)(c)
[4] RCW 61.24.163 (17)
[5] RCW 61.24.163 (9)

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

111.     At all times, BONY, through its loan servicer Shellpoint, retained the *right* to control the issuance of the NTS even though Defendant MTC had the authority to control the foreclosure process. *Wilcox v. Basehore*, 187 Wn.2d 772, 789 (2017)(vicarious liability is extended where a principal "is accountable" for the actions of an agent). Thus, MTC is also bound by the calculations for tolling laid out by Judge Zilly in *The Bank of New York Mellon v. Karen D. Smith*, 2:18-cv-00764-TSZ, Dkt. No. 1-2, pg. 7 (U.S. Dist. Ct., W.D. Wash. May, 28, 2018).

112.     Defendants' unfair and deceptive practices have a real and substantial potential for repetition and thereby the capacity to injure others.

113.     Neither Defendant NewRez LLC nor Shellpoint are exempt from Washington's foreclosure mediation program because NewRez LLC is the beneficiary of deeds of trust in more than two-hundred fifty (250) trustee sales of owner-occupied residential real property. *See* RCW 61.24.166.

114.     NewRez's website boasts it is, "licensed to lend in 49 states." NewRez has a Washington consumer loan company license. *See*  https://www.newrez.com/about-us/

115.     Shellpoint's website describes it as, "America's 15th-largest non-bank servicer[,]" and that they, "have offices in Greenville, SC and Houston, TX." *See* https://www.shellpointmtg.com/about-us. As of April 2018, Shellpoint's servicing portfolio contained 233,033 loans (excluding REO) with an unpaid principal balance of approximately $57.8 billion. This reflects continued growth for the servicing portfolio from $39.6 billion at the end of 2016. ***See* Ex. D**, Moody's Shellpoint Servicer Quality Report of October 10, 2018.

116.     Defendant MTC, doing business in Washington as Trustee Corps conducts non-judicial foreclosure in California, Nevada, Arizona, Washington, Oregon, Texas and Idaho.

117.     Defendant BONY, is the trustee of CWABS Inc., Asset-Backed Certificates Series 2007-SD1 which has at least 1,647 total assets in asset-backed securities and a total asset value of asset-backed securities of $358,848,399.00. Moreover, BONY is the trustee under the pooling and servicing agreements of at least 49 such security trusts.

SECOND AMENDED COMPLAINT - 16

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

118.     The Consumer Protection Division of Washington's Attorney General's Office ("AGO") received other complaints of Defendants' default mitigation failure. The AGO's Catalyst Reports shows two complaints regarding New Penn (NewRez LLC's former name) from 2013 to 2015 and twenty complaints regarding Shellpoint from 2014 to 2017. *See* **Ex. E**, Washington Attorney General, Consumer Protection Division, Catalyst Reports.

119.     Ms. Smith and defendants occupy very unequal bargaining positions. Ms. Smith was powerless to affect any progress toward mitigation or resolution while defendants simply refused to communicate in defiance of the foreclosure mediator and refused to address the issues of foreclosure in good faith. RCW 61.24.163(9) and. *See* **Ex. B.**

120.     Ms. Smith was injured in the form of a negatively impacted credit profile for over ten years. Defendants' failure to mitigate left plaintiff with a credit profile in flux and eliminated hope of moving forward pending resolution.

121.     Defendants' prolonged mitigation evasion humiliated and professionally damaged plaintiff because it harmed her reputation as a certified residential real estate appraiser. Plaintiff's prolonged status in foreclosure disqualified her from eligibility to receive appraisal assignments as an appraiser on the FHA Appraisal Roster. 24 C.F.R. §200.202(b)(2) *and See Taggart v. GMAC Mortgage, LLC, et al*, 12-cv-0415, Dkt. No. 54, (U.S. Dist. Ct., E.D. Penn., Aug. 12, 2013)(Appraiser was removed from the FHA Roster for being listed on HUD's Credit Alert Verification Reporting System ("CAVRS") for defaulting on his own mortgage loan.)

122.     Indeed, months after defaulting on her loan, plaintiff learned her license was terminated on FHA's appraiser roster. *See* **Ex. C,** e-mail of May 13, 2008 from HUD stating, "License terminated on appraiser roster."

123.     Ms. Smith would not have been injured in her business and property but for defendants' dilatory and manipulative conduct.

124.     Ms. Smith refrained from re-applying for a position on the FHA Roster as well as the VA Roster because the prolonged foreclosure disqualifies her from those rosters, instead Ms. Smith attempted to resolve the disqualifying foreclosure with Defendants.

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

125.     Ms. Smith has been a certified residential real estate appraiser for twenty-seven, (27) years, but was unable to accept FHA or VA appraisal assignments for twelve (12) of those years because of the continuous and unending foreclosure status imposed by defendants.

126.     The career restrictions and resulting income reduction caused by defendants' default mitigation evasion, caused the Plaintiff to seek lesser paying data-entry work unrelated to her training, knowledge, and experience.

127.     The career restrictions and resulting income reduction caused by defendants' default mitigation evasion, has affected plaintiff emotionally and physically and plaintiff is currently seeing a therapist for treatment of emotional distress.

128.     By carrying out its role in violation of its duty under RCW 61.24.010(5), MTC recorded the NTS beyond the statute of limitations; thus, extending damages further.

129.     But for Defendants' dilatory conduct plaintiff would not be incurring the arrears, additional costs and expenses described above.

130.     In failing to mitigate Plaintiff's mortgage default, defendants artificially inflated the cost of the mortgage loan with the accumulation of over a decade in arrears.

## C.     COUNT THREE: NEGLIGENT MISREPRESENTATION: DEFENDANTS BONY, SHELLPOINT, AND MALCOLM & CISNEROS

131.     Plaintiff incorporate herein by reference as though fully set forth at length each preceding allegation and statement contained herein, inclusive, of the Factual Allegations.

132.     Ms. Smith incorporates herein by reference as though fully set forth at length each preceding allegation and statement contained herein, inclusive, of the Factual Allegations.

133.     Under the circumstances alleged, Defendants acting at the direction of BONY, through its loan servicer Shellpoint and their attorneys Malcolm & Cisneros owed Ms. Smith a duty to provide her with accurate information regarding the loan modification process during the FFA mediation. *See* RCW 61.24.163(9).

134.     Defendants acting at the direction of BONY, through its loan servicer Shellpoint and their attorneys Malcolm & Cisneros, negligently represented to Ms. Smith that they would be offered a fair opportunity to obtain a loan modification. Defendants' representation was

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

negligent because even though they participated in the FFA Mediation, the investors on the loan did not give any authority to modify the loan and even after indicating that the investor would indeed entertain a modification application, they subsequently failed to participate, paid the mediation fees late and did not attend the last mediation in January 2018.

135. Ms. Smith complied with the obligations of the FFA mediation and complied with all obligations under RCW 61.24.165 and 61.24.163.

136. Participating in the FFA mediation with no intention of offering a loan modification, and by failing to meet obligations to participate and attend scheduled mediations demonstrates a lack of exercise of reasonable care or competence in communicating with Ms. Smith.

137. Ms. Smith justifiably relied on Defendants BONY, Shellpoint and Malcolm & Cisneros' misrepresentations, expecting to be offered a good faith review of her loan modification application and to negotiate in good faith in regard to the time-barred nature of the mortgage loan at issue on the Property.

138. Ms. Smith has suffered significant injury because of Defendants BONY, Shellpoint and Malcolm & Cisneros' negligent misrepresentation that induced her to enter into loan modification contracts with Defendants to cure the default on her home loan. These injuries were caused by her reliance on the specialized knowledge Defendants had regarding BONY's willingness to engage in a loan modifications process.

139. Additionally, Ms. Smith incorporates the injury to business and property alleged under count two for violations of the CPA claim in addition to the emotional distress permitted under a negligent misrepresentation claim.

140. Ms. Smith is entitled to compensatory damages, and attorney's fees and costs expended in reliance upon Defendants' negligent misrepresentations.

141. The career restrictions and resulting income reduction caused by defendants' default mitigation evasion, has affected plaintiff emotionally and physically and plaintiff is currently seeing a therapist for treatment of emotional distress.

SECOND AMENDED COMPLAINT - 19

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

**D.     COUNT FOUR: WASHINGTON CONSUMER PROTECTION ACT UNDER RCW 19.86 (CPA) – AS TO DEFENDANTS MALCOLM & CISNEROS, BONY, AND SHELLPOINT REGARDING THE JUDICIAL FORECLOSURE COMPLAINT**

142.     Plaintiff incorporates herein by reference as though fully set forth at length each preceding allegation and statement contained herein, inclusive, of the Factual Allegations.

143.     Acting as alleged herein, Defendant BONY, through its loan servicer Shellpoint, and Malcolm & Cisneros ("defendants") initiated a judicial foreclosure of Ms. Smith's property after the passing of the statute of limitation. *The Bank of New York Mellon v. Karen D. Smith*, 2:18-cv-00764-TSZ, Dkt. No. 1-2, pg. 7 (U.S. Dist. Ct., W.D. Wash. May, 28, 2018).

144.     Under the CPA, Ms. Smith's mortgage is trade or commerce. RCW 193.86.010(2).

145.     Acting as alleged herein defendants' conduct was unfair and deceptive when defendants filed a judicial foreclosure in state court that was time barred.

146.     Defendant BONY, through its loan servicer Shellpoint, and Malcolm & Cisneros filed a lawsuit on April 11, 2018 claiming that the loan debt was still legally owed after it had been discharged and time-barred.

147.     Defendant BONY, through its loan servicer Shellpoint, and Malcolm & Cisneros' lawsuit of April 11, 2018 omitted the material fact of the September 11, 2009 bankruptcy discharge. Defendant BONY, through its loan servicer Shellpoint, and Malcolm & Cisneros were informed of the discharge and knew, or should have known, that the discharge started the statute of limitations to run and that it also prevented the plaintiff from incurring personal liability on the debt. The factual omission of the debt's discharge in the lawsuit was misleading and the equivalent of an affirmative false statement.

148.     Defendant BONY, through its loan servicer Shellpoint, and Malcolm & Cisneros filed the Judicial Foreclosure Complaint demanding an award of all expenses and costs of collection even though plaintiff's personal liability on the debt was previously discharged in bankruptcy. *Id.* at Dkt. No. 1-2, pgs. 7-8.

149.     NewRez LLC's website boasts it is, "licensed to lend in 49 states." NewRez has a Washington consumer loan company license. *See* https:/ /www .newrez.com/about-us/.

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

150.     Shellpoint's website describes it as, "America's 15th-largest non-bank servicer[,]" and that they, "have offices in Greenville, SC and Houston, TX." *See* https://www.shellpointmtg.com/about-us.

151.     As of April 2018, Shellpoint's servicing portfolio contained 233,033 loans (excluding REO) with an unpaid principal balance of approximately $57.8 billion. This reflects continued growth for the servicing portfolio from $39.6 billion at the end of 2016. ***See* Ex. D**, Moody's Shellpoint Servicer Quality Report of October 10, 2018.

152.     Defendant BONY, is the trustee of CWABS Inc., Asset-Backed Certificates Series 2007-SD1 which has at least 1,647 total assets in asset-backed securities and a total asset value of asset-backed securities of $358,848,399.00. Moreover, BONY is the trustee under the pooling and servicing agreements of at least 49 such security trusts.

153.     Defendant Malcolm Cisneros is a debt collection agency operating without a license in Washington State. Malcolm Cisneros represents financial institutions in connection with their defaulted consumer and commercial loans in California, Arizona, Nevada, Oregon, Texas and Washington and practices in state and federal courts in California, Arizona, Nevada, Hawaii, Oregon, Colorado, Washington, Florida, Texas, and South Dakota.

154.     By filing the Judicial Foreclosure Complaint after the statute of limitations expired, Defendants, joint and severally, prolonged mitigation evasion further humiliating and professionally injuring plaintiff further because it continued to harm her reputation as a certified residential real estate appraiser. Plaintiff's prolonged status in foreclosure continued to disqualify her from eligibility to receive appraisal assignments as an appraiser on the FHA Appraisal Roster. 24 C.F.R. §200.202(b)(2) *and See Taggart v. GMAC Mortgage, LLC, et al*, 12-cv-0415, Dkt. No. 54, (U.S. Dist. Ct., E.D. Penn., Aug. 12, 2013)(Appraiser was removed from the FHA Roster for being listed on HUD's Credit Alert Verification Reporting System ("CAVRS") for defaulting on his own mortgage loan.)

155.     Ms. Smith continues to be injured in the form of a negatively impacted credit profile. Defendants' failure to mitigate left plaintiff with a credit profile in flux and eliminated hope of moving forward pending resolution.

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

156.    Ms. Smith was also harmed because she spent time and effort to see an attorney to investigate the time-barred nature of the Judicial Foreclosure Complaint, and incurred attorney's fees she paid to defend against the Judicial Foreclosure Complaint.

157.    But for Defendants filing the Judicial Foreclosure Complaint beyond the statute of limitations Ms. Smith would not have had to spend any time, resources and money responding to the judicial foreclosure, nor would her credit profile continue to carry the negative reporting of the never-ending foreclosure, nor would Ms. Smith continue to be restricted from the FHA appraiser roster.

### E.    COUNT FIVE: FAIR DEBT COLLECTION PRACTICES ACT – MALCOLM & CISNEROS

158.    Ms. Smith incorporate herein by reference as though fully set forth at length each preceding allegation and statement contained herein, inclusive, of the Factual Allegations.

159.    Defendant Malcolm & Cisneros collects Ms. Smith's loan on behalf of defendant BONY who were assigned this debt after it went delinquent.

160.    Defendant Malcolm & Cisneros regularly uses the mails and/or the telephone in their business, the principal purpose of which is to collect, or attempt to collect, directly or indirectly, delinquent consumer debts and they started collecting on this debt after it was already in default. Thus, they are a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

161.    Suing or effectuating a proceeding for repossession or foreclosure on a time-barred debt is a practice uniformly held by courts to violate the FDCPA as a matter of law.

162.    Defendant Malcolm & Cisneros initiated a judicial foreclosure by filing a complaint on April 11, 2018 in Washington State, King County Superior Court to dispossess Ms. Smith from her homestead, Malcolm & Cisneros made false, deceptive and misleading representations in violation of § 1692e by threatening to sue her on a claim they knew or should have known was time-barred.

163.    Here, Defendant Malcolm & Cisneros' filing of a time barred judicial foreclosure violated the FDCPA, including but not limited to the following:

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

a. Using any false, deceptive, or misleading representation or means in connection with the collection of any debt, in violation of 15 U.S.C. §§ 1692e and e(10);

b. Falsely representing the character, amount, or legal status of any debt, in violation of 15 U.S.C. § 1692e(2)(A);

c. Using any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer in violation of 15 U.S.C. § 1692e(10);

d. Representing or implying that nonpayment of any debt will result in …. the seizure ……or sale of any property or wages of any person when such action is not lawful, in violation of 15 U.S.C. § 1692d(4);

e. Using unfair or unconscionable means to collect or attempt to collect any debt, in violation of 15 U.S.C. § 1692f; and

f. Collecting any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law, in violation 15 U.S.C. § 1692f (1).

164. Defendant Malcolm & Cisneros' conduct in violation of the FDCPA also caused and proximately caused Ms. Smith harm by causing her to spend time and effort to see an attorney to investigate the time-barred nature of the Judicial Foreclosure Complaint, and to incur the attorney's fees she paid to defend against the Judicial Foreclosure Complaint.

165. Ms. Smith also suffered emotional distress from the judicial foreclosure and she continued to suffer due to the financial uncertainty, unease and fear that she would be lose her home and be responsible for a money judgment even though her personal obligation was discharged in bankruptcy and her debt was time-barred.

166. But for Malcolm & Cisneros' filing of this Judicial Foreclosure Complaint, Ms. Smith would not have incurred the financial expense of paying an attorney to defend against the Judicial Foreclosure Complaint, would not have spent her time and effort to see an attorney to

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

investigate the validity of the Judicial Foreclosure Complaint and would not have experienced

the emotional distress, unease, financial insecurity and fear that her home would be taken away.

167. Ms. Smith is entitled to compensatory, special and general damages as allowed by

law.

168. Ms. Smith is also entitled to statutory damages, attorneys' fees and costs pursuant

to 15 U.S.C. § 1692k.

**F.     COUNT SIX: FAIR DEBT COLLECTION PRACTICES ACT – SHELLPOINT**

169. Ms. Smith incorporate herein by reference as though fully set forth at length each

preceding allegation and statement contained herein, inclusive, of the Factual Allegations.

170. Defendant Shellpoint collects the Plaintiff's loan on behalf of defendant BONY. It

did not service the Loan until after the Loan had been declared to be in default.

171. Thus, Defendant Shellpoint was acting as a debt collector, as that term is defined

in the FDCPA, as to the delinquent consumer debt their attempts to collect from Ms. Smith.

172. Defendant Shellpoint started collecting on this debt after it was already in default.

They are a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6), because they

regularly use the mails and/or the telephone in their business, the principal purpose of which is to

collect, or attempt to collect, directly or indirectly, delinquent consumer debts.

173. Collecting on a time-barred debt is a practice uniformly held by courts to violate

the FDCPA as a matter of law.

174. Thus, Defendant Shellpoint violated the FDCPA when they sent misleading

mortgage statements after April 10, 2018 claiming that Ms. Smith owed periodic monthly

installments on the Property even though the debt had been time barred since March 11, 2016.

175. Additional communications received by the Plaintiff in correspondence dated

March 20, 2019 in response to a Request for Information Pursuant to Section 1024.36 of

Regulation X was also confusing and misleading since it said that Shellpoint was continuing to

service the loan, stating that interest, payments, credits, fees, and/or other permissible charges

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

can continue to cause the loan balance to vary from day to day. *See* **Ex. F**, Correspondence from Shellpoint.

176.    The March 20, 2019 correspondence also reiterated that Ms. Smith was due for the July 1, 2007 payment and that Shellpoint on behalf of BONY could continue to demand payment pending an appeal.

177.    Since the mortgage debt was time barred, any communication to Ms. Smith that included amounts that were not owed, were an attempt to trick the Plaintiff into resuming installment payments that were not owed to restart the statute of limitations.

178.    Additionally, since August 2018, on a monthly basis Shellpoint sent mortgage statements on a monthly basis that included the attorney and filing fees associated with the time-barred Judicial Foreclosure Complaint and other unlawful fees and charges.

179.    Here, Defendant Shellpoint communications that Ms. Smith still owed the time barred debt violated the FDCPA, including but not limited to the following:

    a.    Using any false, deceptive, or misleading representation or means in connection with the collection of any debt, in violation of 15U.S.C. §§ 1692e and e(10);

    b.    Falsely representing the character, amount, or legal status of any debt, in violation of 15 U.S.C. § 1692e(2)(A);

    c.    Representing or implying that nonpayment of any debt will result in …. the seizure ……or sale of any property or wages of any person when such action is not lawful, in violation of 15 U.S.C. § 1692d(4);

    d.    Using unfair or unconscionable means to collect or attempt to collect any debt, in violation of 15 U.S.C. § 1692f;

    e.    Collecting any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law, in violation 15 U.S.C. § 1692f(1); and

HENRY & DeGRAAFF, P.S.
787 MAYNARD AVE S
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

f.   Threatening to take any judicial action to effect dispossession or disablement of property because the Property is exempt by law from such dispossession or disablement, in violation of 15 U.S.C. § 1692f(6)(c).

180.   Defendant Shellpoint's conduct in violation of the FDCPA caused and proximately caused injury and damages to the Plaintiff.

181.   Ms. Smith is entitled to compensatory, special and general damages as allowed by law.

182.   Ms. Smith is also entitled to statutory damages, attorneys' fees and costs pursuant to 15 U.S.C. § 1692k.

**G.   COUNT SEVEN: QUIET TITLE ACTION**

183.   Ms. Smith incorporate herein by reference as though fully set forth at length each preceding allegation and statement contained herein, inclusive, of the Factual Allegations.

184.   Under Washington law, promissory notes and deeds of trust securing such notes are subject to a six-year statute of limitations. RCW 4.16.040; *Westar Funding v. Sorrels*, 157 Wn.App. 777, 784 (2010). When an action to foreclose on a deed of trust is barred by the statute of limitations, RCW 7.28.300 authorizes the record owner to bring a quiet title action to clear the deed of trust. *Westar*, 157 Wn.App at 785

185.   The statute of limitations period commences, and a cause of action accrues when a party has a right to seek relief. More than six years have elapsed since the debt secured by the BONY was discharged and the right to foreclose on that mortgage loan commenced. *Jarvis v. Fed. Nat'l Mortg. Ass'n*, No. C16-5194-RBL at *3, 2017 WL 1438040 (W.D. Wash. Apr. 24, 2017), aff'd mem., 726 Fed.App'x. 666 (9th Cir. 2018).

186.   As such, any actions to foreclose the BONY Loan is now barred under the statute of limitations, and Ms. Smith is entitled to quiet title against the BONY under RCW 7.28.300.

187.   The BONY loan constitutes a cloud on Ms. Smith's title and should be removed.

HENRY & DeGRAAFF, P.S.
787 MAYNARD AVE S
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

**H.     COUNT EIGHT: INJUNCTIVE RELIEF – ALL DEFENDANTS**

188.    Ms. Smith incorporate herein by reference as though fully set forth at length each preceding allegation and statement contained herein, inclusive, of the Factual Allegations.

189.    A plaintiff may seek injunctive relief for violations of the Consumer Protection Act. RCW 19.86.090.

190.    Ms. Smith does seek injunctive relief from this Court which would enjoin Defendants from collecting debts in the manner described above from both Ms. Smith and any other person similarly situated.  *Scott v. Cingular Wireless*, 160 Wash. 2d 843, 853 (2007).

191.    Specifically, Ms. Smith seeks an injunction prohibiting Defendants from its unlawful collection tactics, including but not limited to demanding collection fees/costs that are specifically disallowed by statute, misrepresenting the status of the debt, and collecting on time-barred debt that is passed the statute of limitations in a foreclosure context.

192.    Ms. Smith has reason to believe these actions make up a pattern and practice of behavior and have impacted other individuals similarly situated.

193.    Injunctive relief is necessary to prevent further injury to Ms. Smith and to the Washington state public as a whole.

194.    Injunctive relief should therefore issue as described herein.

**IV.     PRAYER FOR RELIEF & DAMAGES**

WHEREFORE, Plaintiff respectfully prays that judgment be entered against all the Defendants for the following:

1.     For judgment against Defendants for actual damages;

2.     For statutory damage of $1,000 for FDCPA violations;

3.     Any and all actual damages, including those injuries in the form of recovery of lost income for at least twelve years, damaged reputation, damaged credit, consequential expenses and costs, and any other actual cost or damage incurred as a result of defendants dilatory and manipulative conduct;

4.     For actual damages including emotional distress pursuant to 15 U.S.C. § 1692k(a)(1);

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

5.      For treble damages, pursuant to RCW 19.86.090 up to $25,000.00, calculated from the damages determined by the court;

6.      For costs and reasonable attorney's fees as determined by the Court pursuant to 15 U.S.C. § 1692k(a)(3) and RCW 19.86 *et seq*;

7.      As a result of Defendants' CPA violations, Ms. Smith has suffered unnecessarily costly circumstances, increased debt and loan cost, and damage to her credit and professional reputation;

8.      For interest on the above amounts as authorized by law;

9.      For Judgment that Ms. Smith own, in fee simple absolute, the Property as against the Defendant BONY and all persons claiming under the Defendant, who shall have no estate, right, title, lien or interest in or to the Plaintiff's Property, or any part thereof, and that title to Ms. Smith's Property be quieted to the Plaintiff against all claims of Defendant and all persons claiming under Defendant;

10.     Judgment extinguishing the mortgage Loan currently owned by BONY on the Plaintiff's Property;

11.     For injunctive relief pursuant to RCW 19.86.090 as described above;

12.     For leave to amend this complaint as needed and as required; and

13.     For such other relief as the Court deems equitable and just.


DATED this 6th of August 2019.


___/s/ Christina L. Henry_____          __/s/ Arthur Ortiz_____
Christina L Henry, WSBA 31273               Arthur Ortiz, WSBA 26676
HENRY & DEGRAAFF, PS                        The Law Office of Arthur Ortiz
787 Maynard Ave S                           6015 California Ave SW No. 203
Seattle, WA 98104                           Seattle, WA 98136-1674
206-330-0595 Fax 206-400-7609               206-898-5704
chenry@hdm-legal.com                        arthur@aeolegal.com

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S
SEATTLE, WA 98104
V (206) 330-0595 / F (206) 400-7609

# **Exhibit B**

Plaintiff's Foreclosure Mediation Certification of January 10, 2018 and admission of lack of required authority of July 19, 2017.

# Foreclosure Mediation Report/Certification

This form must be completed in its entirety, signed and dated by the mediator, and sent to Department of Commerce, the borrower(s), beneficiary, and trustee within 7 business days after the conclusion of the mediation (RCW 61.24.163 (12)).

Once the certification is completed and submitted by the mediator, the mediation is closed. The mediator may revise or withdraw a submitted certification only if there has been a material oversight on her/his behalf prior to the certification's completion. Department of Commerce has no authority to modify or withdraw a certification or to re-open a mediation that had been certified and closed by a mediator. Under RCW 61.24.163, mediators, not Department of Commerce, are solely responsible for completing and submitting the certifications.

BORROWERS: Violating the duty of good faith under the Foreclosure Mediation Program is a violation of the Consumer Protection Act (19.86 RCW), per RCW 61.24.135. Please note that Department of Commerce sends copies of certifications showing "Beneficiary Not in Good Faith" to the Washington State Attorney General's Office (Consumer Protection Division) and to the Washington State Department of Financial Institutions for their review and possible investigation. Borrowers may be contacted for more information. However, borrowers who wish to avoid their foreclosure must act on their own behalf. Investigation or action by these agencies is NOT likely to stop the foreclosure.

A certification showing the beneficiary failed to act in good faith constitutes a borrower's defense to the non-judicial foreclosure action on the basis of which the mediation referral was made (RCW 61.24.163 (14)(a)). Also, if there was no agreement reached in the mediation and the NPV Question 3 below was answered "Yes," this certification constitutes a basis for the borrower to enjoin (stop) the foreclosure (RCW 61.24.163 (14)(c)). Borrowers need to take action (file a lawsuit) if they wish to enjoin their foreclosure. Borrowers can visit www.commerce.wa.gov/foreclosures for more details and to review their options (see the "What happens if there is no agreement after mediation?" or "Homeowner Resources" sections).

Borrowers should also know that a certification showing the borrower failed to act in good faith authorizes the beneficiary to move forward with the foreclosure (RCW 61.24.163 (15)).

| | 1st Session | 2nd Session | 3rd Session | Session(s) Occurred | Yes | Mediator's Name | Julia Devin |
|---|---|---|---|---|---|---|---|
| Date | 04/27/2017 | 01/09/2018 | | No. of Sessions Convened | 2 | Mediator's Phone | 206-697-0488 |
| Time | 1:30 p.m. | 9:30 a.m. | | Is this an amended certification? | No | Mediator's Email | devinconsulting.mediation@gmail.com |
| Location | KCDRC | KCDRC | | | | Co-Mediator's Name | None |

## Borrower(s) and Representative(s)    See RCW 61.24.163 (12)(b)

| Role | | Borrower | | | |
|---|---|---|---|---|---|
| Name | Subject Property | Karen D. Smith | | | |
| Address City State, Zip | 819 21st Ave Seattle, WA98122 | 819 21st Ave Seattle, WA98122 | | | |
| Parcel# | 9126100140 | | | | |
| Lot# | 16 and 17, Block 2 | | | | |
| Phone | | ███████ | | | |
| Email | | kdelores@msn.com | | | |
| Participation | | In Person | | | |

## Beneficiary and Representative(s)    See RCW 61.24.163 (12)(b) and (8)(a)

| Individual | Aldo Jimenez | Grant E. Courtney | | | |
|---|---|---|---|---|---|
| Title/Role | Loss Mitigation Specialist | Sr. Attorney | | | |
| Organization | Shellpoing | Malcolm Cisneros | | | |
| Address City State, Zip | C/O Malcolm Cisneros Attorneys | 5000 N.E. North Tolo Rd. Bainbridge Is., WA 98110 | | | |
| Phone | | 206-660-2059 | | | |
| Email | | Gcourtney@mclaw.org | | | |
| Participation | By Phone Med #1 | In Person#1/No Show#2 | | | |
| Authority | Auth'd to Settle | | | | |

## MEDIATION OUTCOME

| **Session(s) Occurred - Agreement Reached** | **Session(s) Occurred - No Agreement Reached** | **No Mediation Session Occurred** |
|---|---|---|
| ☐ Reinstatement | ☐ Borrower Unable to Meet Restructure Offer | ☐ HOME-RETENTION Agreement Reached Prior to Mediation Session (specify - max. 100 characters): |
| ☐ Repayment | ☐ Borrower Unwilling to Accept Restructure Offer | |
| ☐ Extension | ☐ Parties Mediated in Good Faith, No Agreement Reached (specify - max. 100 characters): | ☐ NON-RETENTION Agreement Reached Prior to Mediation Session (specify - max. 100 characters): |
| ☐ Adj Rate Changed to Fixed Rate | | |
| % Change: | | |
| ☐ Amortization Extended | **Borrower Not In Good Faith** (see RCW 61.24.163 (15)): | ☐ Borrower Withdrew from Mediation (specify reason - max. 100 characters): |
| ☐ Interest Rate Reduction | ☐ Borrower Failed to Provide Timely and/or Accurate Documents | |
| % Change: | ☐ Borrower Failed to Timely Participate in Mediation | ☐ Mediation Cancelled by Mediator per RCW 61.24.163 (11) |
| ☐ Principal Reduction | ☐ Borrower's Representative Not Authorized to Make Binding Decisions | |
| Amount: $ | ☐ Borrower Failed to Pay Mediation Fee | **Borrower Not In Good Faith** (see RCW 61.24.163 (15)): |
| ☐ Monthly Principal Payment Reduced | ☐ Other (specify - max. 100 characters): | ☐ Borrower Failed to Provide Timely and/or Accurate Documents |
| Amount: $ | | ☐ Borrower Failed to Timely Participate in Mediation |
| ☐ Monthly Interest Payment Reduced | | ☐ Borrower Failed to Pay Mediation Fee |
| Amount: $ | | ☐ Other (specify - max. 100 characters): |
| ☐ Refinance | **Beneficiary Not In Good Faith** (see RCW 61.24.163 (14) and (16)): | |
| ☐ Other Loan Restructure/Modification (new loan terms were not provided to mediator) | ☐ Beneficiary Failed to Provide Timely and/or Accurate Documents | **Beneficiary Not In Good Faith** (see RCW 61.24.163 (14) and (16)): |
| ☐ Forbearance of Principal | ☒ Beneficiary Failed to Timely Participate in Mediation | ☐ Beneficiary Failed to Provide Timely and/or Accurate Documents |
| Write-off: $ | ☐ Beneficiary's Representative Not Authorized to Make Binding Decisions | ☐ Beneficiary Failed to Timely Participate in Mediation |
| ☐ Forbearance of Interest | ☐ Beneficiary Failed to Pay Mediation Fee | ☐ Beneficiary Failed to Pay Mediation Fee |
| Write-off: $ | ☐ Beneficiary Requested Borrower to Waive Future Claims | ☐ Other (specify - max. 100 characters): |
| ☐ Forbearance of Fees and Penalties | ☐ Other (specify - max. 100 characters): | |
| Write-off: $ | | |
| ☐ Forbearance - Other | | ☐ Other than the Above (specify - max. 100 characters): |
| Write-off: $ | | |
| ☐ Deed in Lieu of Foreclosure | | |
| ☐ Short Sale - Debt/Interest Zeroed | | |
| ☐ Voluntary Surrender | | |
| ☐ Cash for Keys | | |
| ☐ Other Non-Retention Agreement (specify - max. 100 characters): | | |

## NET PRESENT VALUE (NPV)

| Yes | 1. Were NPV inputs provided by the beneficiary? (NPV inputs are required; see RCW 61.24.163 (5)(g) and (9)(c)) |
|---|---|
| Yes | 2. Was an NPV test/analysis completed? |

If YES and the above outcome is "No Agreement Reached," attach the test (or its description) along with the NPV inputs, identify who prepared it, and provide the test result expressed in a dollar amount. (See RCW 61.24.163 (12)(e))

If NO and the above outcome is "No Agreement Reached," include below an explanation as to why there was no NPV test done. If agreement was reached or no session occurred, there is no need to attach or describe the NPV test.

| N/A | 3. If YES on question 2, did the NPV of the modified loan exceed the anticipated net recovery at foreclosure? (See RCW 61.24.163 (14)(c)) |
|---|---|

## COMMENTS (max. 1,000 characters)

This certification is based on my review and consideration of the totality of the mediation process. I appreciate that at times both parties made efforts to participate in the mediation in good faith. However, taking into account the mediation process as a whole, the Beneficiary's non-responsiveness, lack of contractual authority to modify the loan -- which had to be remedied, late payment of mediation fees and non-appearance at the final mediation constitute a lack of good faith participation in the mediation process. Note: the attached NPV test does not include a Modification NPV so, while partially run, it does not appear to be complete.

I, _____ Julia Devin _____ do hereby attest and certify that all the information in this Mediation Report/Certification is true and correct.

(Full Name of Approved Mediator)

_____ Signature _____          1/10/2018
                                  Date

P.O. BOX 51850
LIVONIA MI 48151-5850
RETURN SERVICE REQUESTED





**Shellpoint**
Mortgage Servicing

**Phone Number:** 866 825 2174
**Fax:** 866 467 1187
**Email:** Lossmitigation@shellpointmtg.com
**Mon - Thurs:** 8:00AM 6:00PM
**Fri:** 8:00AM 5:00PM

S-SFRECS20  L-2501  R-106
P771L500300142   522577950 I00474
KAREN D SMITH
PO BOX 22417
SEATTLE WA 98122-0417

| Loan Number: | |
|---|---|
| Principal Balance: | $356,250.00 |
| Property: | 819 21St Avenue |
| | Seattle, WA 98122 |

07/19/2017

**Dear Borrower:**

Thank you for contacting us about your mortgage. You were evaluated for mortgage payment assistance based on the eligibility requirements of BANK OF NEW YORK AS TRUSTEE FOR CWABS 2007-SD1, the owner of your mortgage loan.

We evaluated you for the following loan modification products. Based on our review of your loan, property and financial circumstances, you are not eligible for the following Loan Modification due to the following reasons:

- Standard Modification – We are unable to offer you a Modification because we service your loan on behalf of BANK OF NEW YORK AS TRUSTEE FOR CWABS 2007-SD1, an investor or group of investors. BANK OF NEW YORK AS TRUSTEE FOR CWABS 2007-SD1 has not given us the contractual authority to modify your loan under the Modification Program.

**Other potential options to avoid foreclosure.** We understand that you may be facing financial difficulties. While Shellpoint is not able to approve you for a loan modification, we may have other programs available to help.

While it may be difficult to make the decision to leave your home, you are conditionally approved for the programs listed below. These can allow you a fresh start toward a new home, and may even pay you to help cover relocation expenses. Please call us at 866-825-2174 to discuss further documentation required for these programs in order to be fully approved.

- **Short Sale** – A short sale involves the sale of the home for less than the balance you owe. If the owner of your loan agrees to a short sale, you can sell your home and pay of all (or a portion of) your balance with the proceeds.

- **Deed-in-Lieu of Foreclosure** – With a Deed-in-Lieu of Foreclosure, you transfer the title of your property to the owner of your mortgage in exchange for a release from your loan and payments.

The most important thing is to avoid foreclosure but there are also other benefits to the fresh start options that may be available to you.

- **Benefits Include:**
  o Eliminate your remaining mortgage debt
  o Avoid the negative impact of a foreclosure
  o May be eligible for relocation assistance
  o Start repairing your credit sooner than if you went through a foreclosure
  o Flexible exit options let you leave the home immediately, or consider other ways to transition

**If you can, please pay in full** *immediately*. We recognize that being denied for a loan modification may be disappointing news for you. However, in order to avoid additional expenses resulting from late payments and to avoid foreclosure, it is important that you make the full payment listed above or contact us regarding the additional option we presented above as quickly as possible.

Remember, your mortgage payment was due on 07/01/2007 and has accrued late charges of $2,111.07. To avoid additional foreclosure activity, it is important that you make your full mortgage payment and late charges in the amount of $575,148.70 immediately.

**SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOUR RIGHTS.**

P I000001  A 0515396262 000950102J0400

Please send your payment to:

Shellpoint Mortgage Servicing
P.O. Box 740039
Cincinnati, OH 45274-0039

If your mortgage loan is reinstated and you subsequently experience a financial hardship, you may contact us to request reconsideration for mortgage payment assistance or other alternatives to foreclosure.

If you have questions about this letter and how to reinstate your mortgage, please contact us at 866-825-2174. If you have concerns about the evaluation of your mortgage for foreclosure alternatives, then please contact Aldo Jimenez at 888-557-9326.

Making decisions about your mortgage when you're facing financial challenges can be uncomfortable. With so much information available, it's hard to know where to turn. Shellpoint is ready to assist you in exploring the best option for your individual situation! Call us today at 866-825-2174.

Sincerely,
Aldo Jimenez
888-557-9326 Ext 7781
Loss Mitigation Department
Shellpoint Mortgage Servicing

Case 2:19-cv-00538-dCC Document 118-2 Filed 06/08/21 Page 57 of 88
Case 2:19-cv-00538-dCC Document 118-2 Filed 06/08/21 Page 57 of 88
Additional Information and Legal Notices



**Right to Appeal**

You have the right to appeal our determination not to offer you the loan modification Trial Period Plan(s) listed above. If you would like to appeal, you must contact us in writing at the address provided below, no later than 8/18/2017, and state that you are requesting an appeal of our decision. You must include in the appeal your name, property address, and mortgage loan number. You must also specify the reasons for your appeal, and provide any supporting documentation. Your right to appeal expires 8/18/2017. Any appeal requests or documentation received after 8/18/2017 may not be considered.

If you elect to appeal, you do not have to accept this offer to pursue a short sale until resolution of the appeal. If we determine on appeal that you are eligible for a loan modification Trial Period Plan, we will send you an offer for that Trial Period Plan. In that case, you may choose to accept the current offer to pursue a short sale or you may notify us of your intent to accept the new Trial Period Plan offer by contacting us at 866-825-2174 or in writing at P.O. Box 10826 Greenville, SC 29603-0826  no later than 14 calendar days from the date of the appeal decision.

If you wait to make the payment amount described above until after receiving our appeal decision, your loan will become more delinquent. Any unpaid interest, and other unpaid amounts, such as escrows for taxes and insurance, will continue to accrue on your mortgage loan during the appeal, and will be added to the total amount due to bring your loan current.

The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is: Federal Trade Commission, Equal Credit Opportunity, 600 Pennsylvania Avenue, NW, Washington, DC 20580.

Under federal law, you have the right to obtain a free copy of your credit report from Transunion LLC, the consumer reporting agency who provided us the credit report, within 60 days of this notice.

You have a right to dispute any inaccurate information in your credit report. If you find mistakes on your credit report, contact the consumer reporting agency. It is a good idea to check your credit report to make sure the information it contains is accurate. Your credit score was obtained with your permission from TransUnion LLC on 06/06/2014. Below is their contact information:

TransUnion LLC
P.O Box 2000
Chester, PA 19016
Toll-Free: 800-888-4213

**Your credit score was 623 when it was obtained in part of your evaluation on 07/18/2017. How your score compares to the scores of other consumers:**
Very Bad Credit: credit scores below 600
Bad Credit: credit scores between 600 and 650
Fair Credit: credit scores between 650 and 700
Good Credit: credit scores between 700 and 750
Very Good Credit: credit scores between 750 and 800

The below are key factors that affected your credit score.

- Serious delinquency, and public record or collection filed.
- Number of accounts with delinquency.
- Proportion of balances to credit limits on bank/national revolving or other revolving accounts is too high.
- Time since delinquency is too recent or unknown.

Under federal law, you have the right to obtain a free copy of your credit report from each of the nationwide consumer reporting agencies once a year.

To order your free annual credit report—
By telephone: Call toll-free: 1-877-322-8228
On the web: Visit www.annualcreditreport.com
By mail: Mail your completed Annual Credit Report Request Form (which you can obtain from the Federal Trade Commission's web site at https://www.consumer.ftc.gov/articles/pdf-0093-annual-report-request-form.pdf) to:

Annual Credit Report Request Service
P.O. Box 105281
Atlanta, GA 30348-5281

**Notice to the Loan Modification Applicant**

In connection with your application for a loan modification, the lender must disclose to you the score that a consumer reporting agency distributed to users and the lender used in connection with your home loan, and the key factors affecting your credit scores. The credit score is a computer generated summary calculated at the time of the request and based on information that a consumer reporting agency or lender has on file. The scores are based on data about your credit history and payment patterns. Credit scores are important because they are used to assist the lender in determining whether you will obtain a loan. They may also be used to determine what interest rate you may be offered on the mortgage. Credit scores can change over time, depending on your conduct, how your credit history and payment patterns change, and how credit scoring technologies change. Because the score is based on information in your credit history, it is very important that you review the credit-related information that is being furnished to make sure it is accurate. Credit records may

000950202D0000

vary from one company to another. If you have questions about your credit score or the credit information that is furnished to you, contact the consumer reporting agency at the address and telephone number provided with this notice, or contact the lender, if the lender developed or generated the credit score. The consumer reporting agency plays no part in the decision to take any action on the loan application and is unable to provide you with specific reasons for the decision on a loan application. If you have questions concerning the terms of the loan modification, contact the lender.

**Notice of Error or Information Request Address:** You have certain rights under Federal law related to resolving errors in the servicing of your loan and requesting information about your loan. If you want to request information about your loan or if you believe an error has occurred in the servicing of your loan and would like to submit an Error Resolution or Informational Request, please write to us at: Shellpoint Mortgage Servicing P.O. Box 10826 Greenville, SC 29603-0826

**Please read the following important notices as they may affect your rights.**

This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

**Attention Servicemembers and Dependents:** The federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including interest rate protections and prohibiting foreclosure under most circumstances during and twelve months after the servicemember's military or other service. Counseling for covered servicemembers is available from Military OneSource (800-342-9647) and the United States Armed Forces Legal Assistance or other similar agencies. For more information, please visit the Military OneSource website www.militaryonesource.mil/.

The following is a Spanish translation of the information previously provided:

**Lea por favor las siguientes avisos importantes que puedan afectar sus derechos.**

Esto es un intento de cobrar una deuda y cualquier información obtenida se utilizará para ello. Esta comunicación es de un cobrador de deudas.

Si usted es un cliente en situación de bancarrota o un cliente que ha recibido una descarga de bancarrota de la deuda: tenga en cuenta que este aviso es para informarle de la situación de su préstamo hipotecario. Este aviso no constituye una exigencia de pago ni un aviso de responsabilidad civil contra ninguno de los destinatarios de la presente notificación, que pudiese haber recibido un descargo de este tipo de deuda de conformidad con la legislación vigente sobre bancarrota o que pudiera ser objeto de suspensión automática en virtud de Sección 362 del Código de Bancarrota de los Estados Unidos. No obstante, puede ser una notificación de una posible aplicación de gravamen sobre la propiedad como garantía, que aún no ha sido descargada en su proceso de bancarrota.

**Atención Miembros del Servicio Militar y Dependientes:** Ley de Amparo Civil para miembros del servicio militar y ciertas leyes estatales proporcionan protecciones importantes para usted, incluyendo protecciones de tasas de interés y prohibiendo la ejecución hipotecaria bajo la mayoría de las circunstancias durante y doce meses después del miembro del servicio militar u otro servicio. Asesoramiento para militares con cobertura está disponible de Military OneSource (800-342-9647) y la Asistencia Legal de las Fuerzas Armadas de Estados Unidos o de otras agencias similares. Para más información por favor visite el sitio web de Military OneSource www.militaryonesource.mil/.

# **Exhibit C**

E-mail of May 13, 2008 from HUD to Plaintiff

From: sfadmin@hud.gov <sfadmin@hud.gov>
Sent: Tuesday, May 13, 2008 4:23 PM
To: kdelores@msn.com
Subject: FHA Connection ID

The request for an FHA Connection ID for KAREN SMITH was rejected for the following reason(s):

License terminated on appraiser roster

If you have any questions, please email us at sfadmin@hud.gov

# **Exhibit D**

Moody's Shellpoint Servicer Quality report

October 10, 2018



STRUCTURED FINANCE

## ASSESSMENT
10 October 2018

**TABLE OF CONTENTS**

| | |
|---|---|
| Assessments | 1 |
| Summary Opinion | 1 |
| Servicer Strengths | 1 |
| Servicer Challenges | 1 |
| Servicer Description | 2 |
| Detailed Assessment | 4 |
| Appendix: Moody's Assessment Definition for Servicers and Assessment Scale | 16 |
| Moody's Related Research | 17 |

**Contacts**

Francis Wissman          +1.212.553.2808
*VP-Senior Analyst*
francis.wissman@moodys.com

William Fricke           +1.212.553.4586
*VP-Sr Credit Officer*
william.fricke@moodys.com

Luisa De Gaetano         +1.212.553.3847
*Associate Managing Director*
marialuisa.degaetanopolverosi@moodys.com

**CLIENT SERVICES**

| | |
|---|---|
| Americas | 1-212-553-1653 |
| Asia Pacific | 852-3551-3077 |
| Japan | 81-3-5408-4100 |
| EMEA | 44-20-7772-5454 |

# Shellpoint Mortgage Servicing - Servicer
## Shellpoint Servicer Quality Report

## Assessments

On June 21, 2018, we affirmed Shellpoint Mortgage Servicing (Shellpoint) SQ3+ as a primary servicer of prime residential mortgage loans and as a special servicer.

| Servicer Assessments | |
|---|---|
| Primary Servicer of Prime Residential Mortgage Loans | Affirmed at SQ3+ |
| Special Servicer of Residential Mortgage Loans | Affirmed at SQ3+ |
| **Related Ratings** | |
| None | |

*Assessment publication date: June 21,2018*

## Summary Opinion

The prime and special servicer assessments are based on above average collection abilities, average loss mitigation results, above average foreclosure and timeline management, above average loan administration and below average servicing stability.

## Servicer Strengths

The following three factors were the strongest features of this servicer:

» Maintains excess staffing capacity for loan acquisitions (see Detailed Assessment - Management, Staffing and Training)

» Has a senior management team with, on average, more than 18 years of industry experience, providing a solid base of knowledge and leadership for the company. (see Detailed Assessment - Stability)

» Focuses on automation through technology and process improvements (see Detailed Assessment - Technology and Disaster Recovery)

## Servicer Challenges

The following factor was the weakest feature of this servicer:

» On November 29, 2017, New Residential Investment Corp. announced it entered into a definitive agreement to acquire Shellpoint Partners LLC, including the servicing operation. The transaction closed July 3, 2018. Although New Residential does not have a servicing operation and we believe the acquisition is positive for Shellpoint, there is still uncertainty of operational changes post acquisition in Moody's opinion. (see Detailed Assessment – Servicing Stability)

## Servicer Description

Shellpoint Partners was founded in 2010. The company acquired New Penn Financial, an originator of agency and non-agency mortgage loans, in June 2011. It then acquired Resurgent Mortgage Servicing to service its mortgage servicing rights, loans from New Penn Financial, and third-party re-performing and non-performing loans. Together, these entities form a vertically integrated, residential mortgage banking platform. Since its inception, Shellpoint Mortgage Servicing has transitioned from a captive, special servicer to a third-party special servicer focused on managing residential mortgages for institutional investor clients.

On July 3, 2018, New Residential Investment Corp. announced that it had closed the previously announced acquisition of Shellpoint Partners LLC, a vertically integrated mortgage platform with established origination and servicing capabilities. The acquisition comprises all outstanding equity interests of Shellpoint and all companies within the Shellpoint family, including New Penn Financial, Shellpoint Mortgage Servicing, Avenue 365, and eStreet (an appraisal management company).

Exhibit 1
**Corporate Organization**



*Source: Moody's Investors Service, based on data and information from Shellpoint*

## Servicing Portfolio

As of April 2018, Shellpoint's servicing portfolio contained 233,033 loans (excluding REO) with an unpaid principal balance of approximately $57.8 billion. This reflects continued growth for the servicing portfolio from $39.6 billion at the end of 2016.

Shellpoint services a variety of products, including conforming first-lien mortgages, super-jumbo mortgages, non-conforming first and second-lien mortgages and both open and closed home equity lines of credit (HELOCs). The company services a bifurcated portfolio consisting of a flow of newly-originated loans from New Penn and distressed portfolios from third-party clients. The company's strategy is to continue to grow its portfolio by increasing its volume of both performing and special servicing loans.

This publication does not announce a credit rating action. For any credit ratings referenced in this publication, please see the ratings tab on the issuer/entity page on www.moodys.com for the most updated credit rating action information and rating history.

Exhibit 2
**Servicing Portfolio**
By Product Type



*Source: Moody's Investors Service, based on data from Shellpoint*

Exhibit 3
**Servicing Portfolio**
By Delinquency



*Source: Moody's Investors Service, based on data from Shellpoint*

The servicing portfolio's highest geographic concentration is in California (30%), Florida (8%), New York (7%) and Georgia (4%); no other state exceeds 4% by unpaid principal balance, as shown in the Exhibit below.

Exhibit 4
**Servicing Portfolio**
Geographic Distribution by unpaid principal balance



*Source: Moody's Investors Service, based on data from Shellpoint*

## Detailed Assessment

### Overview

We view Shellpoint's prime and special servicer collection abilities as above average. The company improved its collection performance metrics during the review period and enhanced its private-label servicing capabilities with a new website. Shellpoint's call center metrics were above average for the review period.

We view Shellpoint's loss mitigation abilities as average. Shellpoint implemented a new loss mitigation portal to streamline the modification review process. The company's loss mitigation metrics are average when compared with peers.

We view Shellpoint's foreclosure and REO timeline abilities as above average. The company's foreclosure timeline performance was above average compared to peers. Shellpoint has comprehensive REO management processes, including an experienced property valuation team.

We assess Shellpoint's loan administration abilities as above average. The component assessment is based on solid loan boarding and document management practices.

We view Shellpoint's servicing stability as below average. The stability assessment incorporates Shellpoint's experienced management team and technology infrastructure, which is balanced by the company's former private ownership structure. We believe the acquisition of Shellpoint by New Residential Investment Corp. is positive for Shellpoint.

### Key Assessment Factors

| Component | Assessment | Driver |
|---|---|---|
| Loan Administration | Above Average | » Maintains adequate loan boarding practices. |
| | | » Enhanced bank reconciliation processes. |
| | | » Continued policy of not earning a commission for force-placed insurance. |
| Collections | Above Average | » Collection roll rate metrics were above average compared to peers. |
| | | » Uses a proprietary behavioral scoring model. |
| | | » Call center metrics were above average for customer service and collection calls. |
| Loss Mitigation | Average | » Reported increased level of modifications. |
| | | » Independent audits of all loss mitigation decisions. |
| | | » Loss Mitigation performance metrics were average. |
| Foreclosure & REO Timeline Management | Above Average | » Foreclosure timelines improved compared to prior review. |
| | | » Monitors REO real estate agents via monthly scorecard. |
| | | » Solid foreclosure referral processes with independent reviews. |
| Servicing Stability | Below Average | » Was acquired by New Residential Investment Corp in July 2018. |
| | | » Continues to enhance its internal control culture and oversight processes during review period. |

## Loan Administration

### OPINION

*We view Shellpoint's loan administration abilities as above average. The company's use of document imaging facilitates document retrieval, verification and dispute resolution, and allows agents to respond more quickly to customer inquiries. Shellpoint does not earn a commission for forced-place insurance, nor does it pay lower fees to its insurance vendor for force-placed insurance-related services.*

### UPDATES

»  Enhanced bank reconciliation process with "CashBook" technology, which compares system data to bank data feeds.

### PAYMENT PROCESSING

»  Cash management uses Servicing Director's Customer Service module to update and review payment history, notes, payment amounts and related information. The Fifth Third website is used for scanning customer payments, correspondence, and stubs for making deposits and for viewing scanned documents. Additionally, Fifth Third is also Shellpoint's lockbox provider and has the ability to run a wide variety of reports, including deposit and payment summaries as well as charge-back and adjustment reports.

»  The payment-processing team operates in a secure, limited-access area with camera surveillance throughout.

»  The company uses a fire-safe cabinet to store checks overnight, and physical checks never leave the cashiering area.

### LOAN BOARDING

»  Shellpoint receives a preliminary loan tape 30 days prior to each loan transfer.

»  The company runs all loans through a skip-tracing waterfall to gather contact information for hard-to-reach borrowers prior to loading the data onto its system.

### DOCUMENT MANAGEMENT

»  The company conducts reviews to ensure it has all necessary documents for transferred-in loans, which are loaded onto the system within three days of transfer. All missing documents are identified within 30 days of transfer.

»  Shellpoint images its correspondence with borrowers and makes all imaged documents available on agent desktops.

### INVESTOR REPORTING AND BANK RECONCILIATION

»  Shellpoint has a comprehensive investor-reporting web portal for its clients.

»  The company uses CashBook technology for daily bank reconciliations.

»  Shellpoint reconciles its clearing accounts daily and custodial accounts monthly, with a vendor performing a portion of the reconciliations.

»  The company does not transfer aged, unreconciled bank items to a general ledger suspense account.

»  Funds due to Shellpoint become eligible for write-off at 180 days, or earlier if management deems the funds uncollectible.

### TAX AND INSURANCE

| | |
|---|---|
| **Insurance** | Shellpoint outsources the tracking of hazard insurance and the force-placement of insurance to Proctor Financial Inc. (PFI), while handling inbound calls from borrowers regarding insurance in-house. |
| **Forced-Place Insurance Process** | The forced-placed letter cycle is 60 days; PFI sends out three letters and makes up to three attempts to contact the agent or insurance carrier when the insurance expires. |
| **Taxes** | The company outsources tax contract services to CoreLogic, which provides tax delinquency reports for non-escrowed loans. It conducts the appropriation of tax amounts for escrowed loans, as well as customer-initiated tax-related research and the handling of borrower calls regarding taxes, in-house. |
| **Vendor Management** | Shellpoint monitors its tax and insurance vendors through onsite visits, weekly calibration calls, exception reports and monthly report cards. |

## Customer Service

### OPINION
*The company's call center metrics were above average for the review period. Shellpoint's use of an independent call monitoring group provides the call center with an objective assessment of agents' performance. The company's borrower complaint tracking system, Voice of the Customer (VOC), enables Shellpoint to analyze trends and resolve borrower issues timely.*

### UPDATES

» Enhanced its private-label servicing capabilities with new website and Interactive Voice Recognition (IVR) system.

### ORGANIZATIONAL STRUCTURE

| | |
|---|---|
| **Structure** | Customer service agents are divided into two tiers which: (1) handle basic customer service inquiries and, (2) handle written correspondence, qualified written requests and escalated calls. The company uses some part-time associates in the customer service group. |
| **Accounts Handled** | The customer service call center handles inbound calls from borrowers who are fewer than 30 days delinquent. |
| **Account Allocation** | The call center handles general customer inquiries, and calls can be routed based on agents' skill levels. |
| **Hours of Operation** | Monday to Thursday 8:00 a.m.-12:00 a.m. (EST), Friday 8:00 a.m.-10:00 p.m. (EST) and Saturday 8:00 a.m.-3:00 p.m. (EST) and the last Sunday of the month (4:00 p.m.-9:00 p.m. (EST). |

### CUSTOMER SERVICE STRATEGIES

» Collectors who work on outbound call campaigns also handle the overflow of inbound customer service calls.

» Customer service agents can transfer calls directly to the loss mitigation team.

» Shellpoint's complaint tracking system (VOC) enables the company to track and analyze trends.

### PHONE AND WEB INTERFACE
The customer service group handles the majority of customer calls through its automated self-service system, which includes the IVR, its speech application, and its website.

### IVR FUNCTIONALITY

| | |
|---|---|
| » Retrieve account information | » View escrow information |
| » Make payments | » Available in both English and Spanish |

### WEBSITE FUNCTIONALITY

| | |
|---|---|
| » Retrieve account information | » View escrow information |
| » Make payments | » Live chat |
| » Download loss mitigation forms, and upload completed forms | » Identify missing documents and upload completed loss mitigation package |
| » Get status of loss mitigation workout | |
| | » Set up and edit ACH information |

### PERFORMANCE MANAGEMENT

| | |
|---|---|
| **Call Monitoring** | Ten calls per agent per month by dedicated quality assurance specialist. |
| **Call Recording** | Records 100% of inbound and outbound customer service calls. |
| **Agent Oversight** | Agents are monitored via monthly scorecards based on both quality and efficiency. |
| **Incentive Compensation** | Call center agents receive monthly incentive compensation for meeting both individual and team goals, including the number of calls handled per hour, the outcome of those calls, and the agents' call monitoring scores. |

*CUSTOMER SERVICE CALL CENTER METRICS*

Exhibits 5 and 6 display the customer service call center performance for Shellpoint from May 2017 through April 2018, when the customer service call center had an average call abandonment rate of 3.9% and an average speed of answer of 62 seconds.

Exhibit 5
**Customer Service Call Center Metrics**
**Abandonment Rate**



*Source: Moody's Investors Service, based on data from Shellpoint*

Exhibit 6
**Customer Service Call Center Metrics**
**Average Speed of Answer**



*Source: Moody's Investors Service, based on data from Shellpoint*

## Collection Management

*OPINION*

*We assess the company's collection abilities as above average. Call monitoring is performed by an independent team to ensure quality service over the phones. Shellpoint's extended hours of operation increase the likelihood of reaching delinquent borrowers and have a positive impact on the right-party contact rate.*

*UPDATES*

» Increased collection staff compared to prior review.

*COLLECTION PERFORMANCE METRICS*

Exhibit 7 shows roll-rate analyses over a 12-month period. We classified the loans at the outset of a 12-month static pool in three delinquency categories: current to 29 days delinquent, 30 days delinquent and 60 days delinquent. We then measured the delinquency status of these loans at the end of the static pool period.

Shellpoint demonstrated above average roll-rate performance for both prime loans and special-serviced loans relative to peers.

Exhibit 7
**Collection Management Static Pool Performance***

| Status on Start Date | Current | 30 Days | | 60 Days | |
|---|---|---|---|---|---|
| Status on End Date | Worse | Better | Worse | Better | Worse |
| Prime* | 1.92% | 47.75% | 13.71% | 33.03% | 13.89% |
| Special | 6.12% | 40.08% | 15.34% | 28.50% | 16.58% |

*These metrics are based on loans serviced for Freddie Mac and Fannie Mae, as well as a smaller number of prime loans in private RMBS securitizations or owned by private investors, the servicer or the parent company.
*Source: Moody's Investors Service, based on loan-level data from Shellpoint*

## Organizational Structure

| | |
|---|---|
| *Structure* | Shellpoint's collectors operate in teams dedicated to receiving inbound calls and making outbound calls. Collection staff are based in Greenville and Houston. |
| *Account Allocation* | Collectors are divided by early-stage (1-30 days past due) and late-stage (31-plus days past due) delinquency. |
| *Hours of Operation* | 8:00 a.m. to midnight Monday to Thursday (EST), 8:00 a.m. to 3:00 p.m. (EST) on Saturday and 4:00 p.m. to 9:00 p.m (EST) the last Sunday of each month. |

## Collection Strategies

| | |
|---|---|
| **Collections Environment** | Agents are dedicated to handling either inbound or outbound calls. |
| **Outbound Contact** | Calls are prioritized using a proprietary customer scoring model based on past payment behavior. |
| **Inbound Contact** | Inbound calls are routed based on agents' skill levels and the loan's delinquency. |
| **Collections Timeline** | Outbound collection call campaigns begin as early as the third day of delinquency. Shellpoint orders the first property inspections at 45 days past due, followed by additional collection calls and letters. If determined necessary by the collector, skip tracing is performed for no-contact borrowers as additional methods are employed to locate the borrower. |
| **Tools** | » Predictive auto dialer mixes campaigns and targets calling times to maximize customer contact. |
| | » Behavior scoring model used for calling campaigns. |
| **Options for Borrowers** | Collectors can offer three-month repayment plans to borrowers with short-term delinquencies. If collectors cannot reach a short-term resolution, they refer borrowers to loss mitigation associates. |

*PERFORMANCE MANAGEMENT*

| | |
|---|---|
| **Call Monitoring** | A dedicated quality assurance specialist monitors ten calls per agent monthly. |
| **Call Recording** | Shellpoint records all of its inbound and outbound collection calls. |
| **Agent Oversight** | The company scores individual collectors through a monthly performance scorecard. |
| **Incentive Compensation** | Collectors receive monthly incentive compensation for meeting both individual and team goals, including the outcome of calls and the payment received. |

*COLLECTION CALL METRICS*

Our assessment of a servicer's collections performance takes into account both the static pool analysis and the performance of the call center. Exhibit 8 shows outbound collection activity for the collections department from May 2017 through April 2018. During that period, the right-party contact rate was 3.7%, which is similar compared to prior review.

Exhibit 8
**Outbound Collection Activity**



*Source: Moody's Investors Service, based on data from Shellpoint*

Exhibits 9 and 10 show the collections call center's performance from May 2017 through April 2018, where the center had an average call abandonment rate of 1.0% and an average speed of answer of 17.3 seconds, an improvement from our last review where the center had an average speed of answer of 20 seconds.

Exhibit 9
**Inbound Collection Activity**
Abandonment Rate



Source: Moody's Investors Service, based on data from Shellpoint

Exhibit 10
**Inbound Collection Activity**
Average Speed of Answer



Source: Moody's Investors Service, based on data from Shellpoint

## Loss Mitigation

### OPINION

*We assigned an average component assessment to the company's loss mitigation abilities for both prime and special-serviced loans. The company continues to invest in technology, such as a loss mitigation portal to improve loss mitigation decision timelines. Shellpoint assigns a single point of contact to all borrowers, which facilitates the collections and loss mitigation processes.*

### UPDATES

» Implemented e-signature technology to streamline modification process.

» Implemented new online loss mitigation portal, simplifying the process for borrowers to apply for assistance, upload documents, view status updates, and track trial plans.

### LOSS MITIGATION PERFORMANCE METRICS

Curing and re-performing loans that are seriously delinquent are some of the metrics we use to evaluate a servicer's performance. Shellpoint's loss mitigation performance was average compared to peers.

Exhibit 11
**Loss Mitigation Static Pool Performance**
Status as of 30 April 2018 of loans that were 90-plus delinquent

|  | Total Cure [1] | Cash Flowing [2] | In Limbo [3] | Loss Mitigation [4] | Loss with no Loss Mitigation [5] |
|---|---|---|---|---|---|
| Prime* | 12.99% | 30.94% | 30.52% | 8.88% | 16.67% |
| Special | 15.57% | 34.07% | 28.37% | 8.51% | 13.50% |

* These metrics are based on loans serviced for Freddie Mac and Fannie Mae, as well as a smaller number of prime loans in private RMBS securitizations or owned by private investors, the servicer or the parent company.
[1] Includes current and paid in full
[2] Includes minor delinquency, repayment plans and modifications
[3] Includes 90-plus delinquency and foreclosure
[4] Includes third-party sale, short sale/short pay off and deed-in-lieu
[5] Includes REO sold from foreclosure, in REO from foreclosure and charge-offs
*Source: Moody's Investors Service, based on data from Shellpoint*

### ORGANIZATION STRUCTURE

| Structure | The loss mitigation group consists of three teams working on different stages of loss mitigation: |
|---|---|
|  | 1. The prospecting team conducts outbound calls for late-stage collections, orders door knocks, performs skip tracing, and solicits loss mitigation workouts. |
|  | 2. The negotiation team, comprised of single points of contact (SPOCs), evaluates loss mitigation options for borrowers, follows up with borrowers on missing documents, and runs the net present value (NPV) model to determine the optimal alternative. |
|  | 3. The company conducts pre-foreclosure reviews and determines loss mitigation activities for loans transferred in while in the loss mitigation process. |
| Account Allocation | Loans enter the loss mitigation group at 61 days past due or earlier if imminent default is projected. Shellpoint assigns a SPOC to all accounts at the time of loan transfer/activation, but that SPOC does not become active until the account goes delinquent or expresses imminent default. The SPOC remains the borrower's sole point of contact through the foreclosure process. The company targets a 160-180 loans per SPOC ratio. The loss mitigation specialist also is the borrower's sole point of contact throughout the foreclosure process. |
| Hours of Operation | 8:00 a.m. to 9:00 p.m. (EST) Monday to Friday, and 8:00 a.m. to 1:00 p.m. (EST) Saturday. |

### LOSS MITIGATION STRATEGIES

» Two associates review borrowers' financials in underwriting modifications, including comparing the financials to credit reports.

» The company reviews all modification denials to ensure that the borrowers do not qualify for a modification.

» Shellpoint works with attorneys of borrowers in bankruptcy on potential loss mitigation alternatives once contacted by them, but do not actively solicit.

» The company sends solicitations for loss mitigation to delinquent borrowers on the 31st and 61st days of delinquency.

» If the company has been unable to contact the delinquent borrower by phone, it uses a door knock service. Shellpoint also uses this service to deliver key documents and connect with the borrower to speak with their SPOC.

» The company reaches a solution for the borrower based on an investor-approved workout hierarchy, through its proprietary Loss Mitigation System (LMS).

» The loss mitigation fulfillment department conducts a pre-sale review at the 60th day of delinquency to ensure that Shellpoint has all the necessary information and documentation, and has taken all required actions before referring loans to foreclosure.

*LOSS MITIGATION OPTIONS*

| Loss Mitigation Alternative | Type | Features |
| --- | --- | --- |
| Modification | Proprietary, Investor | The company offers various modification options; including investor and proprietary modification options, which may be streamlined, and may include principal forbearance or principal forgiveness. |
| Short sale | Proprietary, Investor | Shellpoint conducts a short sale when it accepts a payoff from the borrower at a discount to the full loan balance. |
| Repayment plans | Proprietary, Investor | A repayment plan is one in which the borrower pays additional funds each month to bring the arrearages up to date. |
| Deed-in-lieu of foreclosure | Proprietary, Investor | The company actively pursues deeds-in-lieu. |

*Source: Moody's Investors Service, based on information from Shellpoint*

PERFORMANCE MANAGEMENT

The incentive compensation program for the company's loss mitigation associates is based on individual achievements. For prospectors, factors in the incentive compensation program include warm transfers to SPOC, the number of repayment plans, and quality assurance scores. For negotiators, factors include their decisions on loss mitigation alternatives and completion, as well as for completion of the trial plans for modifications. Monthly incentives for the negotiating team are now based on specific portfolio goals and are a more meaningful component of annual compensation.

## Enforcement: Foreclosure, Bankruptcy and REO Timeline Management

### OPINION

*We view Shellpoint's foreclosure and REO timeline management abilities as above average for prime and special servicing loans. We view as positive the company's use of monthly scorecards to monitor the effectiveness of attorneys. The company uses a variety of tools to handle workflow, monitor timelines, and communicate with attorney's and REO agents.*

### UPDATES

» Enhanced attorney network scorecard.

» Initiated new post-foreclosure sale team.

» Enhanced REO management scorecard with both quantitative and qualitative metrics.

### FORECLOSURE AND REO TIMELINE PERFORMANCE METRICS

One of the ways we evaluate a servicer's performance is through execution of default timelines on a state-weighted basis. The company's timeline results were above average for the review period.

Exhibit 13
**Average Foreclosure-REO Timeline Information***

| | Prime | Special |
|---|---|---|
| **Foreclosure Referral**** | | |
| Average Days from Next Payment to Foreclosure Referral | 177 | 456 |
| **Foreclosure Referral to Sheriff Sale** | | |
| Average Days from Foreclosure Referral to Sheriff's Sale (excluding Freddie Mac timeline) | -114 | 190 |
| **Real Estate Owned (REO)** | | |
| Average Days a Property is REO (excluding redemption) | 229 | 296 |

*\* The foreclosure metrics are based on loans serviced for Freddie Mac and Fannie Mae, as well as a smaller number of prime loans in private RMBS securitizations or owned by private investors, the servicer or the parent company. The REO metrics are based on prime loans in private RMBS securitizations or owned by private investor, the servicer or the parent company.*

*\*\* For transferred-in loans, the foreclosure referral timeline is measured from the time the loan was boarded to Shellpoint.*

*\*\*\* With a large portfolio of GSE loans, the company conveys a significant portion of its REO properties to investors.*

*Source: Moody's Investors Service, based on loan-level data from Shellpoint.*

### ORGANIZATIONAL STRUCTURE AND KEY PROCESSES

| Structure | » The foreclosure and bankruptcy department is based in Greenville and Houston. |
|---|---|
| | » The foreclosure group is split by investor, state and attorney firm. |
| | » The REO group is separated into the pre-marketing, marketing and closing functions. |
| | » The bankruptcy group is split into three teams: 1) Claims team to file proofs of claim; 2) Servicing team to track key milestones; and 3) Legal team to handle motions for relief and all other litigation. |
| Pre- Foreclosure Review | » Members of the loss mitigation fulfillment team conduct a manual review of the loan before foreclosure filing, with a second review conducted by the default support team. |
| Account Allocation | » Accounts are assigned to individual specialists based on investor and location. |
| Attorney and Broker Communication | » Shellpoint uses Black Knight's LoanSphere, a rules-based automated system, to communicate with attorneys and track its progress throughout the foreclosure process; and a combination of LoanSphere, Servicing Director, and a proprietary system as its default management system. |
| | » The company uses Equator, an REO management system, to handle REO properties. |
| Attorney Management | » The company monitors its approximately 240 attorney firms every month using proprietary scorecards in the LPS Desktop system. The attorney network manager together with Shellpoint's external audit department are responsible for vendor oversight of the attorneys. |

### Foreclosure

» Shellpoint assigns loans to timeline managers at the time of the loan's referral to foreclosure.

» The company's policy is to refer loans to foreclosure at approximately the 120th day of delinquency.

» A loan undergoes two independent, pre-referral reviews prior to being referred to an attorney for foreclosure filing.

» Loss mitigation and foreclosure managers meet regularly to discuss any loans in foreclosure that have pending approval or have been approved for loss mitigation plans.

» A post-foreclosure review team performs quality control checks.

*Bankruptcy*

» Shellpoint conducts its bankruptcy management in-house, including preparing and filing claims.

» The company conducts nightly scrubs of its servicing portfolio for new bankruptcy filings.

» Shellpoint uses a comprehensive, proprietary bankruptcy case repository to track and manage borrowers who have previously filed for bankruptcy.

» The foreclosure team receives automated alerts when a new bankruptcy is filed so that they can place foreclosure of the loan on hold.

*REO*

» REO managed in-house with overflow handled by two REO asset management companies.

» REO manager maintains broker's and appraiser's license.

» Offer cash-for-keys to avoid lengthy eviction process.

» The company conducts two independent valuations of each property, with a third valuation ordered if the difference between the initial two valuations is greater than 20%.

## Servicing Stability

**OPINION**

*We assign a below average component assessment to the company's servicing stability. The stability assessment incorporates Shellpoint's experienced management team and technology infrastructure, which is balanced by the company's former private ownership structure.*

**UPDATES**

» On November 29, 2017, New Residential Investment Corp. announced it entered into a definitive agreement to acquire Shellpoint Partners LLC, including the servicing operation. The transaction closed July 3, 2018. We believe the acquisition is positive for Shellpoint.

» Shellpoint's servicing portfolio and staff increased compared to prior review.

» Turnover ratio improved compared to prior review.

**FINANCIAL STABILITY**

On July 3, 2018— New Residential Investment Corp. announced that it has closed the previously announced acquisition of Shellpoint Partners LLC ("Shellpoint"), a vertically integrated mortgage platform with established origination and servicing capabilities. The acquisition comprises all outstanding equity interests of Shellpoint and all companies within the Shellpoint family, including New Penn Financial, Shellpoint Mortgage Servicing, Avenue 365, and eStreet an (appraisal management company).

**MANAGEMENT, STAFFING AND TRAINING**

As of April 30, 2018. Shellpoint had 874 associates dedicated to servicing. Shellpoint continues to add depth to its management as it grows its portfolio and servicing operations. Members of senior management average six years of experience with Shellpoint and more than 18 years of industry experience.

Exhibit 14 shows the average number of loans per full-time-equivalent ratio based on loans that became delinquent from April 2017 through May 2018. Shellpoint's staffing ratios were mostly steady in the past 12 months. Shellpoint tries to maintain 10-20% excess staff capacity to be able to take on an unexpected portfolio of loans should the need arise.

Exhibit 14
**Shellpoint Staffing Ratios**
by Delinquency Stage



*Source: Moody's Investors Service, based on data from Shellpoint*

**LEGAL, COMPLIANCE AND OVERSIGHT**

Quality assurance, quality control and compliance teams are part of the Operations Control and Improvement Group, while internal audit has a separate reporting structure.

**INTERNAL AUDIT**

» Risk-based audits are conducted at least annually for high-risk areas.

» The audit group reviews results of quality control reviews and adjusts its audits accordingly.

### COMPLIANCE

» Compliance and legal teams have dual reporting lines to the servicer's CEO, and to the corporate parent's senior vice president/general counsel.

» Shellpoint uses AllRegs as an alert system for regulatory changes.

» Shellpoint Mortgage Servicing had no material instances of non-compliance in its Regulation AB attestation for 2017.

### QUALITY CONTROL

» Performs monthly process audits to ensure compliance with Shellpoint policies and procedures as well as regulatory requirements; also conducts daily, monthly and quarterly workflow audits.

» Monitors remediation plans and their effectiveness prior to closing open issues.

» Holds monthly meetings with executive management to review audit results and remediation efforts.

### LEGAL

» Shellpoint is not currently involved in any material litigation.

» Litigation and compliance team report to Shellpoint's president and to its corporate parent's legal department.

### TECHNOLOGY AND DISASTER RECOVERY

» Primary data center is in Greenville, South Carolina and the back-up data center is located in Katy, Texas.

» Implemented new telephony system.

» Third-party system penetration tests conducted annually.

» Shellpoint maintains back-up generators and UPS batteries at its data center locations.

» The company successfully conducted its most recent disaster recovery test in August 2017.

### Key Systems and Applications

| Application | Function | Source |
|---|---|---|
| Servicing Director | Loan servicing platform | Vendor |
| LoanSphere/Servicing Director/ proprietary system | Default management system | Vendor/ Proprietary |
| LMS | Loss mitigation workflow and decisioning tool | Proprietary |
| Avaya | Telephone management system (IVR) | Vendor |
| OnBase | Document management system | Vendor |
| Insight | Investor web portal | Vendor |
| LPS Desktop | Default tracking and communication | Vendor |
| Equator | REO management system | Vendor |

## Appendix: Moody's Assessment Definition for Servicers and Assessment Scale

Moody's Servicer Quality (SQ) assessments are opinions of the ability of a servicer to effectively prevent or mitigate losses in a securitization. SQ assessments are provided for servicers that act as primary servicer (servicing the assets from beginning to end), special servicers (servicing only the more delinquent assets) or master servicers (overseeing the performance and reporting from all underlying servicers). For primary servicers, the assessment will apply only to the asset type(s) identified in the Servicer Quality Opinion.

A Moody's SQ assessment represents Moody's assessment of a servicer's ability to affect losses based on the factors under its control. The SQ approach works by separating a servicer's performance from the credit quality of the assets being serviced. This is accomplished by measuring actual performance against expected results, based on the credit quality of the portfolio being serviced.

The servicing measures evaluate how effective a servicer is at either preventing defaults in the first place or maximizing the recoveries to a transaction when defaults do occur.

The SQ assessment also takes into account the operational and financial stability of a servicer, as well as its ability to respond to changing market conditions. This assessment is based on the company's organizational structure and management characteristics, financial profile, operational controls and procedures, and strategic goals.

Moody's SQ assessments are different from traditional debt ratings, which are opinions about the credit quality of a specific instrument. SQ assessments do not apply to a company's ability to repay a fixed financial obligation or satisfy contractual financial obligations other than, in limited circumstances, the obligation to advance on delinquent assets it services, when such amounts are believed to be recoverable.

### SQ Assessments Defined

**SQ1** *Strong* combined servicing ability and servicing stability

**SQ2** *Above average* combined servicing ability and servicing stability

**SQ3** *Average* combined servicing ability and servicing stability

**SQ4** *Below average* combined servicing ability and servicing stability

**SQ5** *Weak* combined servicing ability and servicing stability

Where appropriate, a "+" or "-" modifier will be appended to the SQ2, SQ3, and SQ4 assessment and a "-" modifier will be appended to the SQ1 assessment. A "+" modifier indicates the servicer ranks in the higher end of the designated assessment. A "-" modifier indicates the servicer ranks in the lower end of the designated assessment.

## Moody's Related Research

For a more detailed explanation of Moody's approach to this type of transaction as well as similar transactions please refer to the following reports:

### Assessment Methodology:

» Servicing Quality Assessments for Servicers of Residential Mortgages, May 2017 (1067227)

To access any of these reports, click on the entry above. Note that these references are current as of the date of publication of this report and that more recent reports may be available. All research may not be available to all clients.

Moody's publishes a weekly summary of structured finance credit, ratings and methodologies, available to all registered users of our website, at www.moodys.com/SFQuickCheck.

© 2018 Moody's Corporation, Moody's Investors Service, Inc., Moody's Analytics, Inc. and/or their licensors and affiliates (collectively, "MOODY'S"). All rights reserved.

CREDIT RATINGS ISSUED BY MOODY'S INVESTORS SERVICE, INC. AND ITS RATINGS AFFILIATES ("MIS") ARE MOODY'S CURRENT OPINIONS OF THE RELATIVE FUTURE CREDIT RISK OF ENTITIES, CREDIT COMMITMENTS, OR DEBT OR DEBT-LIKE SECURITIES, AND MOODY'S PUBLICATIONS MAY INCLUDE MOODY'S CURRENT OPINIONS OF THE RELATIVE FUTURE CREDIT RISK OF ENTITIES, CREDIT COMMITMENTS, OR DEBT OR DEBT-LIKE SECURITIES. MOODY'S DEFINES CREDIT RISK AS THE RISK THAT AN ENTITY MAY NOT MEET ITS CONTRACTUAL, FINANCIAL OBLIGATIONS AS THEY COME DUE AND ANY ESTIMATED FINANCIAL LOSS IN THE EVENT OF DEFAULT. CREDIT RATINGS DO NOT ADDRESS ANY OTHER RISK, INCLUDING BUT NOT LIMITED TO: LIQUIDITY RISK, MARKET VALUE RISK, OR PRICE VOLATILITY. CREDIT RATINGS AND MOODY'S OPINIONS INCLUDED IN MOODY'S PUBLICATIONS ARE NOT STATEMENTS OF CURRENT OR HISTORICAL FACT. MOODY'S PUBLICATIONS MAY ALSO INCLUDE QUANTITATIVE MODEL-BASED ESTIMATES OF CREDIT RISK AND RELATED OPINIONS OR COMMENTARY PUBLISHED BY MOODY'S ANALYTICS, INC. CREDIT RATINGS AND MOODY'S PUBLICATIONS DO NOT CONSTITUTE OR PROVIDE INVESTMENT OR FINANCIAL ADVICE, AND CREDIT RATINGS AND MOODY'S PUBLICATIONS ARE NOT AND DO NOT PROVIDE RECOMMENDATIONS TO PURCHASE, SELL, OR HOLD PARTICULAR SECURITIES. NEITHER CREDIT RATINGS NOR MOODY'S PUBLICATIONS COMMENT ON THE SUITABILITY OF AN INVESTMENT FOR ANY PARTICULAR INVESTOR. MOODY'S ISSUES ITS CREDIT RATINGS AND PUBLISHES MOODY'S PUBLICATIONS WITH THE EXPECTATION AND UNDERSTANDING THAT EACH INVESTOR WILL, WITH DUE CARE, MAKE ITS OWN STUDY AND EVALUATION OF EACH SECURITY THAT IS UNDER CONSIDERATION FOR PURCHASE, HOLDING, OR SALE.

MOODY'S CREDIT RATINGS AND MOODY'S PUBLICATIONS ARE NOT INTENDED FOR USE BY RETAIL INVESTORS AND IT WOULD BE RECKLESS AND INAPPROPRIATE FOR RETAIL INVESTORS TO USE MOODY'S CREDIT RATINGS OR MOODY'S PUBLICATIONS WHEN MAKING AN INVESTMENT DECISION. IF IN DOUBT YOU SHOULD CONTACT YOUR FINANCIAL OR OTHER PROFESSIONAL ADVISER. ALL INFORMATION CONTAINED HEREIN IS PROTECTED BY LAW, INCLUDING BUT NOT LIMITED TO, COPYRIGHT LAW, AND NONE OF SUCH INFORMATION MAY BE COPIED OR OTHERWISE REPRODUCED, REPACKAGED, FURTHER TRANSMITTED, TRANSFERRED, DISSEMINATED, REDISTRIBUTED OR RESOLD, OR STORED FOR SUBSEQUENT USE FOR ANY SUCH PURPOSE, IN WHOLE OR IN PART, IN ANY FORM OR MANNER OR BY ANY MEANS WHATSOEVER, BY ANY PERSON WITHOUT MOODY'S PRIOR WRITTEN CONSENT.

CREDIT RATINGS AND MOODY'S PUBLICATIONS ARE NOT INTENDED FOR USE BY ANY PERSON AS A BENCHMARK AS THAT TERM IS DEFINED FOR REGULATORY PURPOSES AND MUST NOT BE USED IN ANY WAY THAT COULD RESULT IN THEM BEING CONSIDERED A BENCHMARK.

All information contained herein is obtained by MOODY'S from sources believed by it to be accurate and reliable. Because of the possibility of human or mechanical error as well as other factors, however, all information contained herein is provided "AS IS" without warranty of any kind. MOODY'S adopts all necessary measures so that the information it uses in assigning a credit rating is of sufficient quality and from sources MOODY'S considers to be reliable including, when appropriate, independent third-party sources. However, MOODY'S is not an auditor and cannot in every instance independently verify or validate information received in the rating process or in preparing the Moody's publications.

To the extent permitted by law, MOODY'S and its directors, officers, employees, agents, representatives, licensors and suppliers disclaim liability to any person or entity for any indirect, special, consequential, or incidental losses or damages whatsoever arising from or in connection with the information contained herein or the use of or inability to use any such information, even if MOODY'S or any of its directors, officers, employees, agents, representatives, licensors or suppliers is advised in advance of the possibility of such losses or damages, including but not limited to: (a) any loss of present or prospective profits or (b) any loss or damage arising where the relevant financial instrument is not the subject of a particular credit rating assigned by MOODY'S.

To the extent permitted by law, MOODY'S and its directors, officers, employees, agents, representatives, licensors and suppliers disclaim liability for any direct or compensatory losses or damages caused to any person or entity, including but not limited to by any negligence (but excluding fraud, willful misconduct or any other type of liability that, for the avoidance of doubt, by law cannot be excluded) on the part of, or any contingency within or beyond the control of, MOODY'S or any of its directors, officers, employees, agents, representatives, licensors or suppliers, arising from or in connection with the information contained herein or the use of or inability to use any such information.

NO WARRANTY, EXPRESS OR IMPLIED, AS TO THE ACCURACY, TIMELINESS, COMPLETENESS, MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OF ANY SUCH RATING OR OTHER OPINION OR INFORMATION IS GIVEN OR MADE BY MOODY'S IN ANY FORM OR MANNER WHATSOEVER.

Moody's Investors Service, Inc., a wholly-owned credit rating agency subsidiary of Moody's Corporation ("MCO"), hereby discloses that most issuers of debt securities (including corporate and municipal bonds, debentures, notes and commercial paper) and preferred stock rated by Moody's Investors Service, Inc. have, prior to assignment of any rating, agreed to pay to Moody's Investors Service, Inc. for appraisal and rating services rendered by it fees ranging from $1,500 to approximately $2,500,000. MCO and MIS also maintain policies and procedures to address the independence of MIS's ratings and rating processes. Information regarding certain affiliations that may exist between directors of MCO and rated entities, and between entities who hold ratings from MIS and have also publicly reported to the SEC an ownership interest in MCO of more than 5%, is posted annually at www.moodys.com under the heading "Investor Relations — Corporate Governance — Director and Shareholder Affiliation Policy."

Additional terms for Australia only: Any publication into Australia of this document is pursuant to the Australian Financial Services License of MOODY'S affiliate, Moody's Investors Service Pty Limited ABN 61 003 399 657AFSL 336969 and/or Moody's Analytics Australia Pty Ltd ABN 94 105 136 972 AFSL 383569 (as applicable). This document is intended to be provided only to "wholesale clients" within the meaning of section 761G of the Corporations Act 2001. By continuing to access this document from within Australia, you represent to MOODY'S that you are, or are accessing the document as a representative of, a "wholesale client" and that neither you nor the entity you represent will directly or indirectly disseminate this document or its contents to "retail clients" within the meaning of section 761G of the Corporations Act 2001. MOODY'S credit rating is an opinion as to the creditworthiness of a debt obligation of the issuer, not on the equity securities of the issuer or any form of security that is available to retail investors. It would be reckless and inappropriate for retail investors to use MOODY'S credit ratings or publications when making an investment decision. If in doubt you should contact your financial or other professional adviser.

Additional terms for Japan only: Moody's Japan K.K. ("MJKK") is a wholly-owned credit rating agency subsidiary of Moody's Group Japan G.K., which is wholly-owned by Moody's Overseas Holdings Inc., a wholly-owned subsidiary of MCO. Moody's SF Japan K.K. ("MSFJ") is a wholly-owned credit rating agency subsidiary of MJKK. MSFJ is not a Nationally Recognized Statistical Rating Organization ("NRSRO"). Therefore, credit ratings assigned by MSFJ are Non-NRSRO Credit Ratings. Non-NRSRO Credit Ratings are assigned by an entity that is not a NRSRO and, consequently, the rated obligation will not qualify for certain types of treatment under U.S. laws. MJKK and MSFJ are credit rating agencies registered with the Japan Financial Services Agency and their registration numbers are FSA Commissioner (Ratings) No. 2 and 3 respectively.

MJKK or MSFJ (as applicable) hereby disclose that most issuers of debt securities (including corporate and municipal bonds, debentures, notes and commercial paper) and preferred stock rated by MJKK or MSFJ (as applicable) have, prior to assignment of any rating, agreed to pay to MJKK or MSFJ (as applicable) for appraisal and rating services rendered by it fees ranging from JPY200,000 to approximately JPY350,000,000.

MJKK and MSFJ also maintain policies and procedures to address Japanese regulatory requirements.

REPORT NUMBER    1145322

**CLIENT SERVICES**

| | |
|---|---|
| Americas | 1-212-553-1653 |
| Asia Pacific | 852-3551-3077 |
| Japan | 81-3-5408-4100 |
| EMEA | 44-20-7772-5454 |



Case 2:19-cv-00588-JCC   Document 45-5   Filed 08/06/19   Page 1 of 48

# **Exhibit E**

Catalyst Reports
Consumer Protection Division, Washington Attorney General

# Catalyst Report

## Complainants for Respondents By Name

### 4/20/2017

| Complaint | Complainant | Practice | Date Added | Date Closed | Resolution | Amount Disputed | Estimated Savings | Actual Savings |
|---|---|---|---|---|---|---|---|---|
| **Resurgent Mortgage Servicing / Shellpoint Mortgage Servicing** | | | | | | | | |
| 445759 | Toskey, Renee Elaine | 316-Billing Issues, 320-Unsatisfactory Repair/Service, 445-Forced Place Insurance | 3/25/2014 | 4/28/2014 | Resolution-CLOSED ADJUSTED | $1,149.83 | $0.00 | $11,149.83 |
| 450006 | Higgins, Gregg | 444-Foreclosure Issue | 6/18/2014 | 6/18/2014 | Resolution-OTHER | $0.00 | $0.00 | $0.00 |
| 453886 | Gustavson, Karen | 316-Billing Issues | 9/5/2014 | 10/7/2014 | | $2,312.86 | $0.00 | $2,312.86 |
| 464773 | Samuelsen, Hollyanne | 444-Foreclosure Issue | 4/15/2015 | 7/31/2015 | Resolution-OTHER | $0.00 | $0.00 | $0.00 |
| 469141 | Carmichael, Amy and Adrian Jo | 444-Foreclosure Issue | 7/14/2015 | 8/17/2015 | | $54,069.00 | $54,069.00 | $0.00 |
| 471699 | Paakanen, Jeremy | 444-Foreclosure Issue | 9/8/2015 | 1/14/2016 | | $0.00 | $0.00 | $0.00 |
| 474005 | Muambila, Frank B | 316-Billing Issues | 10/20/2015 | 2/3/2016 | | $0.00 | $0.00 | $0.00 |
| 476932 | Tidwell, Daniel | 444-Foreclosure Issue | 12/21/2015 | 1/7/2016 | Resolution-OTHER | $0.00 | $0.00 | $0.00 |
| | Tidwell, Shawn | | | | | $0.00 | $0.00 | $0.00 |
| 486915 | Leong, Matthew | 316-Billing Issues | 6/16/2016 | 10/20/2016 | | $0.00 | $0.00 | $0.00 |
| **Total for Resurgent Mortgage Servicing / Shellpoint Mortgage Servicing** | | | | | | **$57,531.69** | **$54,069.00** | **$13,462.69** |
| **Shellpoint Mortgage Servicing** | | | | | | | | |
| 464770 | Firth, Patty | 444-Foreclosure Issue | 4/15/2015 | 8/3/2015 | | $0.00 | $0.00 | $0.00 |

| Complaint | Complainant | Practice | Date Added | Date Closed | Resolution | Amount Disputed | Estimated Savings | Actual Savings |
|---|---|---|---|---|---|---|---|---|
| 467346 | Bulette, Jean & Keiji | 445-Forced Place Insurance, 444-Foreclosure Issue | 6/5/2015 | 8/10/2015 | | $0.00 | $0.00 | $0.00 |
| 473868 | Frost, Shane | 316-Billing Issues | 10/19/2015 | 11/5/2015 | Resolution-CLOSED ADJUSTED | $0.00 | $0.00 | $0.00 |
| 488573 | Donier, Jeremiah | 444-Foreclosure Issue, 301-Failure To Deliver/Perform | 7/20/2016 | 9/21/2016 | Resolution-PART ADJUSTED | $87,536.83 | $0.00 | $0.00 |
| 495784 | Martinez, Sarah | 444-Foreclosure Issue, 316-Billing Issues | 12/7/2016 | 12/15/2016 | Resolution-CLOSED ADJUSTED | $0.00 | $0.00 | $0.00 |
| 496461 | Aric H Jarrett, | 444-Foreclosure Issue, 404-Collection Practices | 12/23/2016 | 1/18/2017 | Resolution-CLOSED INQUIRY/INFORMATION | $0.00 | $0.00 | $0.00 |
| 496656 | Miller, Bria | 444-Foreclosure Issue, 405-Credit Reporting Error | 12/28/2016 | 1/13/2017 | Resolution-CLOSED ADJUSTED | $279,911.00 | $0.00 | $0.00 |
| 498234 | Hoy, Aaron and Jeanette | 444-Foreclosure Issue, 443-Foreclosure Escalation | 1/11/2017 | 3/30/2017 | | $0.00 | $0.00 | $0.00 |
| 500650 | White, Alvin B | 444-Foreclosure Issue | 2/22/2017 | 3/10/2017 | Resolution-OTHER | $0.00 | $0.00 | $0.00 |
| 503677 | Olsen-Missildine, Peggy J | 316-Billing Issues | 4/20/2017 | | | $0.00 | $0.00 | $0.00 |
| **Total for Shellpoint Mortgage Servicing** | | | | | | **$367,447.83** | **$0.00** | **$0.00** |
| **Shellpoint/Resurgent Mortgage Servicing** | | | | | | | | |
| 459821 | McGreal, Gary Lionel | 444-Foreclosure Issue | 1/13/2015 | 4/21/2015 | | $679,298.44 | $0.00 | $0.00 |
| 462768 | Gruenfelder, Cheryl 999-L | Other/Miscellaneous | 3/6/2015 | 6/11/2015 | | $204,330.96 | $0.00 | $0.00 |
| **Total for Shellpoint/Resurgent Mortgage Servicing** | | | | | | **$883,629.40** | **$0.00** | **$0.00** |

# Catalyst Report

## Complainants for Respondents By Name

### 4/20/2017

| Complaint | Complainant | Practice | Date Added | Date Closed | Resolution | Amount Disputed | Estimated Savings | Actual Savings |
|---|---|---|---|---|---|---|---|---|
| **New Penn Financial** | | | | | | | | |
| 457256 | Azcapotzalco, Cherylle Ander | 446-Third-Party Loan Modification Issue | 11/14/2014 | 1/20/2015 | | $0.00 | $0.00 | $0.00 |
| Total for New Penn Financial | | | | | | **$0.00** | **$0.00** | **$0.00** |
| **New Penn Services** | | | | | | | | |
| 427283 | Domingo, Gary Dela Cruz | 222-Advance Fee Fraud | 3/8/2013 | 10/14/2013 | | $1,000.00 | $0.00 | $0.00 |
| Total for New Penn Services | | | | | | **$1,000.00** | **$0.00** | **$0.00** |

1 of 1

# **Exhibit F**

Shellpoint Letter dated March 20, 2019



**Shellpoint**
Mortgage Servicing

55 Beattie Place, Suite 110
Greenville, SC 29601

Toll Free Phone 1-800-365-7107
Toll Free Fax 1-866-467-1137

*Hours of Operation*
Monday-Friday 8:00AM 10:00PM
Saturday 8:00AM-3:00PM

***Validation of Debt***

March 20, 2019

Henry & DeGraaff, PS
Christina L. Henry
150 Nickerson Street
Ste 311
Seattle, WA 98109

RE:    Client/Homeowner: Karen D Smith
       Property Address: 819 21st Ave. Seattle, WA 98122
       Reference Number: 0515396262

Dear Christina L. Henry:

This letter is in response to your inquiry regarding the above referenced loan. Shellpoint Mortgage Servicing
("Shellpoint") is the servicer For The Bank Of New York Mellon Fka The Bank Of New York, As Trustee For The
Benefit Of The Certificateholders Of The Cwabs Inc., Asset-Backed Certificates, Series 2007-Sd1, ("BANK OF NY as
trustee for CWABS 2007-SD1"). Shellpoint began servicing this loan on or about December 15, 2013.

Upon review of your correspondence, Shellpoint has determined that some of your inquiries are overly broad or do not
fall within the scope of a Qualified Written Request because they are related to the origination of the loan or the trust.
Shellpoint will gladly respond to inquiries relating to the servicing of the loan. As the servicer, Shellpoint is not required
to respond to inquiries related to origination, underwriting, subsequent sale or securitization, or determination to sell,
assign, or transfer the servicing of the mortgage loan. Shellpoint is also not required to provide the original wet ink
documents, nor the name and location of the document custodian. The information in the Assignment of Mortgage and
Pooling and Servicing Agreement are matters of public record and you may be able to find it at www.scc.gov or through
your county recorder's office. We are not required to provide documents relied upon that constitute confidential,
proprietary, or privileged information.

Additionally, Shellpoint has determined your dispute does not provide any **specific** details or event regarding servicing
errors or any other specific information on which we can form the basis for further investigation. However, in keeping
with our goal to achieve the highest level of customer satisfaction, please review the following information. We hope this
addresses the concerns expressed in your correspondence:

Please note, Shellpoint's records indicate the loan was discharged through a Chapter 7 Bankruptcy. Shellpoint is not
attempting to collect the debt, as your personal liability was discharged. However, the mortgage lien survived the
discharge and Shellpoint will continue to service the loan according to the original agreement and protect the creditor's
rights in the associated property. In doing so, you will only receive communications from Shellpoint that are legally

TD03192019B

required, or that are specifically requested and authorized by you.

Our records indicate, you are representing the homeowner in their Chapter 7 Bankruptcy. As such, we are responding to you. Please forward our response to your client.

As of the date of this communication, your principal balance is $356,250.00. Please note, this amount does not include any interest, fees, debits, credits that may have accrued to date. Because interest, payments, credits, fees, and/or other permissible charges can continue to cause the loan balance to vary from day to day, you should contact us at 800-365-7107 to determine the exact balance. Per your request, please review the following loan information:

1. The current owner of this loan is BANK OF NY as trustee for CWABS 2007-SD1 and their address is: Mailing Address:101 Barclay St., 8W New York, NY 10286
2. This loan was originated with Mortgage Solutions Management, Inc, A California Corporation and was originated on February 09, 2007.
3. The term of the loan is 360 months.
4. The original amount of the principal obligation under the mortgage was: $356,250.00.
5. The escrow balance on the loan is currently: (-$54,046.38).
6. The current interest rate is: 11.650%.
7. Payments are to be made on the 1st of each month, beginning April 01, 2007, plus any remaining amount due on the maturity date of March 01, 2037.
8. The date of last full payment was: September 18, 2007.
9. As of the date of this letter, the loan is due for the payment due July 01, 2007.

We are currently working to provide you with updated reinstatement figures.

Please also note, the case was dismissed on October 16, 2018, with prejudice. However, an appeal was filed on December 6, 2018 on the Order of Dismissal. Once the outcome of the case is final the loan will be updated accordingly.

You have the right to request documentation supporting our determination that no error has occurred in the servicing of the loan.

Enclosed are copies of the loan agreement you signed at origination, the security instrument for the property, the loan transaction history.

If you have any further questions or concerns, please contact our Customer Service department at 1-800-365-7107.

Sincerely,

Compliance Department
Shellpoint Mortgage Servicing

TD03192019B

**Please read the following important notices as they may affect your rights.**

NewRez LLC dba Shellpoint Mortgage Servicing is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. NewRez LLC dba Shellpoint Mortgage Servicing's NMLS ID is 3013.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

**Attention Servicemembers and Dependents:** The federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including interest rate protections and prohibiting foreclosure under most circumstances during and twelve months after the servicemember's military or other service. Counseling for covered servicemembers is available from Military OneSource (800-342-9647) and the United States Armed Forces Legal Assistance or other similar agencies. For more information, please visit the Military OneSource website www.militaryonesource.mil/.

**Notice of Error or Information Request Address**

You have certain rights under Federal law related to resolving errors in the servicing of your loan and requesting information about your loan. If you want to request information about your loan or if you believe an error has occurred in the servicing of your loan and would like to submit an Error Resolution or Informational Request, please write to us at the following address: Shellpoint Mortgage Servicing P.O. Box 10826 Greenville, SC 29603.

A successor in interest is someone who acquires an ownership interest in a property secured by a mortgage loan by transfer upon the death of a relative, as a result of a divorce or legal separation, through certain trusts, between spouses, from a parent to a child, or when a borrower who is a joint tenant or tenant by the entirety dies. If you are a successor in interest, or you think you might be, please contact by phone, mail or email to start the confirmation process.

If you prefer to receive communication in a language other than English, please contact us at 800-365-7107 to speak with a translator in your preferred language about the servicing of your loan or a document you received.

Si prefiere recibir las comunicaciones en otro idioma que no sea el inglés, por favor, contáctenos en el 800-365-7107 para hablar con un traductor en el idioma de su preferencia sobre la gestión de su préstamo o cualquier documento que haya recibido.

如果您要使用英语以外的其他语言进行交流，请致电 800-365-7107，我们将根据您首选的语言安排相应的译员，与您就贷款服务事项或您所接收的文件进行商讨。

New Penn Financial LLC dba Shellpoint Mortgage Servicing NMLS ID: 3013

New Penn Financial LLC dba Shellpoint Mortgage Servicing NMLS ID: 3013

TD03192019B